**UNITED STATES of America, Plaintiff,**

v.

**Stanley P. GIMBEL, Defendant.**

**No. 84–CR–10.**

United States District Court,
E.D. Wisconsin.

Aug. 23, 1984.

On Motion For Reconsideration
And Clarification March 12, 1985.

G. Roger Markley, Sp. Asst. U.S. Atty., Chicago, Ill., for plaintiff.

William M. Coffey, Coffey Coffey & Geraghty, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

### I.

*Background and Procedure*

On January 17, 1984, the grand jury returned a sixteen-count indictment against the defendant, Stanley P. Gimbel, charging him with multiple criminal violations of 18 U.S.C. §§ 2 [1] & 1001 [2] and 31 U.S.C.

---

1. Title 18 U.S.C. § 2 provides:
§ 2. Principals
(a) Whoever commits an offense against the United States or aids, abets, counsels, com-

§ 5313 [3] & 5322.[4] Count One of the indictment states that Gimbel, an attorney who represents clients in criminal and tax matters, knowingly, willfully and intentionally falsified, concealed and covered up by a scheme and device material facts which are within the jurisdiction of an agency or department of the United States Government, namely the Internal Revenue Service. (See Appendix A) The remaining counts charge specific instances of violations which occurred between April, 1982 and May, 1983. (See Appendix B)

In common parlance, the government is accusing Gimbel of devising and carrying out a money laundering scheme for certain of his clients, some of whom were engaged in criminal activities. Under this scheme Gimbel or someone acting on his direction would either withdraw or deposit currency [5] totalling over $10,000.00 in a single day

mands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. Title 18 U.S.C. § 1001 provides:

§ 1001. Statements or entries generally
Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. Title 31 U.S.C. § 5313 provides:

§ 5313. Reports on domestic coins and currency transactions
(a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

(b) The Secretary may designate a domestic financial institution as an agent of the United States Government to receive a report under this section. However, the Secretary may designate a domestic financial institution that is not insured, chartered, examined, or registered as a domestic financial institution only if the institution consents. The Secretary may suspend or revoke a designation for a violation of this subchapter or a regulation under this subchapter (except a violation of section 5315 of this title or a regulation prescribed under section 5315), section 411 of the National Housing Act (12 U.S.C.

1730d), or section 21 of the Federal Deposit Insurance Act (12 U.S.C. 1829b).

(c)(1) A person (except a domestic financial institution designated under subsection (b) of this section) required to file a report under this section shall file the report—

(A) with the institution involved in the transaction if the institution was designated;
(B) in the way the Secretary prescribes when the institution was not designated; or
(C) with the Secretary.
(2) The Secretary shall prescribe—
(A) the filing procedure for a domestic financial institution designated under subsection (b) of this section; and
(B) the way the institution shall submit reports with it.

4. Title 31 U.S.C. § 5322 provides:

(a) A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315) shall be fined not more than $1,000, imprisoned for not more than one year, or both.

(b) A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315), while violating another law of the United States or as part of a pattern or illegal activity involving transactions of more than $100,000 in a 12-month period, shall be fined not more than $500,000, imprisoned for not more than 5 years, or both.

(c) For a violation of section 5318(2) of this title or a regulation prescribed under section 5318(2), a separate violation occurs for each day the violation continues and at each office, branch, or place of business at which a violation occurs or continues.

5. "Currency" is defined in 31 C.F.R. § 103.11 as:

The coin and currency of the United States or of any other country, which circulate in and are customarily used and accepted as money in the country in which issued. It includes U.S. silver certificates, U.S. notes and Federal Reserve notes, but does not include bank checks or other negotiable instruments not customarily accepted as money.

through the trust account which Gimbel's law firm maintained at a Milwaukee bank. A financial institution [6] such as a bank [7] is required to file a currency transaction report (CTR) with the Internal Revenue Service for all currency transactions exceeding $10,000.00. Since 1981, banks have been asked to aggregate multiple transactions made by one person in the course of a single day if they are aware of them. The indictment alleges that Gimbel attempted to evade these reporting requirements by breaking up the transactions into amounts of less than $10,000.00 and making multiple deposits or withdrawals in a single day; by naming only himself or his law firm's trust account as the party for whom the transactions were being made; and by advising others to use false names when opening bank accounts and endorsing checks. The indictment implies that the motive for this scheme was to conceal the origin of currency garnered from criminal activity and to evade paying income taxes. Gimbel is also said to have counseled these clients to underreport their income for tax purposes.

On April 30, 1984 the magistrate issued a Recommendation and Order which upheld the Indictment except that portion of Count I, ¶ 5(e) which refers to the underreporting of income. This clause was struck as prejudicial and irrelevant surplusage. The defendant then filed an Objection to and Appeal from Magistrate's Recommendation and Order of April 30, 1984, on the following grounds:

**6.** A "financial institution" is defined in 31 U.S.C. § 5312(a)(2) as:

(A) an insured bank (as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h)));

(B) a commercial bank or trust company;

(C) a private banker;

(D) an agency or branch of a foreign bank in the United States;

(E) an insured institution (as defined in section 401(a) of the National Housing Act (12 U.S.C. 1724(a)));

(F) a thrift institution;

(G) a broker or dealer registered with the Securities and Exchange Commission under the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.);

(H) a broker or dealer in securities or commodities;

(I) an investment banker or investment company;

(J) a currency exchange;

(K) an issuer, redeemer, or cashier of travelers' checks, checks, money orders, or similar instruments;

(L) an operator of a credit card system;

(M) an insurance company;

(N) a dealer in precious metals, stones or jewels;

(O) a pawnbroker;

(P) a loan or finance company;

(Q) a travel agency;

(R) a licensed sender of money;

(S) a telegraph company;

(T) an agency of the United States Government or of a State or local government carrying out a duty or power of a business described in this clause (2); or

(U) another business or agency carrying out a similar, related, or substitute duty or power the Secretary of the Treasury prescribes.

Furthermore, 31 C.F.R. § 103.11 provides:

Each agency, branch, or office within the United States of any person doing business in one or more of the capacities listed below:

(1) A bank (except bank credit card systems);

(2) A broker or dealer in securities;

(3) A person who engages as a business in dealing in or exchanging currency as, for example, a dealer in foreign exchange or a person engaged primarily in the cashing of checks;

(4) A person who engages as a business in the issuing, selling, or redeeming of travelers' checks, money orders or similar instruments, except one who does so as a selling agent exclusively or as an incidental part of another business;

(5) A licensed transmitter of funds, or other person engaged in the business of transmitting funds abroad for others.

**7.** A "bank" is defined in 31 C.F.R. § 103.11 as:

(a) Each agency, branch or office within the United States of any person doing business in one or more of the capacities listed below:

(1) A commercial bank or trust company organized under the laws of any State or of the United States;

(2) A private bank;

(3) A savings and loan association or a building and loan association organized under the laws of any State or of the United States;

(4) An insured institution as defined in section 401 of the National Housing Act;

(5) A savings bank, industrial bank or other thrift institution;

(6) A credit union organized under the laws of any State or of the United States; and

(7) Any other organization chartered under the banking laws of any State and subject to the supervision of the bank supervisory authorities of a State.

(b) Each agent, agency, branch or office within the United States of a foreign bank.

1) the indictment contains misstatements of the law;

2) Count I fails to allege an offense and is insufficient;

3) Count I is unconstitutionally vague;

4) Count I is duplicitous;

5) the charge in Count I under 18 U.S.C. §§ 2 & 1001 is unconstitutional;

6) Count I impermissibly merges with Counts II through XVI;

7) Counts II through XVI fail to allege an offense;

8) Counts II and XVI are unconstitutionally vague;

9) Sections 5313 and 5322 of Title 31 of the United States Code are unconstitutional on their face and/or as applied.

The government appeals from that part of the Magistrate's Recommendation and Order which strikes as prejudicial and irrelevant surplusage that part of Count I, ¶ 5(e) of the Indictment which alleges that the defendant counseled individuals "to report income to the Internal Revenue Service in an amount different than actually received by those persons as an alternative to such evasion and falsity." The government contends that this clause is "highly relevant" toward showing the purpose of the scheme it claims the defendant devised. *See* Government's Objection to and Appeal from Magistrate's Recommendation and Order of April 30, 1984 at 2.

## II.

### *The Defendant's Objections*

The defendant's motions all challenge the sufficiency of the Indictment. Those challenging the constitutionality of the law allegedly violated and those which say that the Indictment fails to state the elements of a crime go to the validity of this court's jurisdiction. "[A] federal court has jurisdiction to try criminal cases only when the information or indictment alleges a violation of a valid federal law; and it is ultimately the court's responsibility to ensure that jurisdiction exists." *United States v. Saade,* 652 F.2d 1126, 1134 (1st Cir.1981). The motions to dismiss based on duplicity,

multiplicity, surplusage, impermissible merger and vagueness of the charges go to the form of setting forth these charges in the Indictment.

The test for the sufficiency of an indictment is whether "[i]t states the elements of the offense intended to be charged with particularity sufficient to apprise the accused of what he must be prepared to meet, and to enable the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *United States v. Garcia-Geronimo,* 663 F.2d 738, 743 (7th Cir. 1981); *United States v. London,* 550 F.2d 206, 210 (5th Cir.1977); *United States v. Logwood,* 360 F.2d 905, 907 (7th Cir.1966); *United States v. Raineri,* 521 F.Supp. 16, 22 (W.D.Wis.1980). The court may properly decide all questions of law raised by the defendant as grounds for dismissing the indictment. *United States v. Jones,* 542 F.2d 661, 664–65 (6th Cir.1976); *United States v. Higgins,* 511 F.Supp. 453, 454 (W.D.Ky.1981).

Because the court must have jurisdiction before this case can proceed, the threshold issue in this appeal from the Magistrate's Recommendation and Order is whether the laws and regulations the defendant is charged with violating are constitutional and, if so, whether the Indictment sufficiently alleges the necessary elements of the crimes charged. *See United States v. Conlon,* 481 F.Supp. 654, 660 (D.D.C.1979), *aff'd in part rev'd. in part,* 628 F.2d 150 (D.C.Cir.1980), *appeal after remand,* 661 F.2d 235 (1981), *cert. denied,* 454 U.S. 1149, 102 S.Ct. 1015, 71 L.Ed.2d 304 (1982). Although the defendant mounts a due process challenge to the statutes he is charged with violating, the rule of strict necessity would have this court attempt to resolve this motion to dismiss by evaluating the sufficiency of the Indictment rather than by declaring any of the laws in question to be unconstitutional. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288,

341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

The defendant argues that sections 5313 and 5322 of Title 31 of the United States Code are unconstitutional on their face and/or as applied because they "do not afford a person of reasonable intelligence notice of what they prohibit or require." Defendant's Objection to and Appeal from Magistrate's Recommendation and Order of April 30, 1984 at 23. Following this line of reasoning, the defendant concludes that 18 U.S.C. §§ 2 & 1001, as applied, are also unconstitutionally vague. "If the financial institution has no legal obligation to file such a CTR it cannot be a crime for an individual 'to cause' the financial institution to fail to file the CTR." *Id.* at 22.

The government responds that the carrying out of the scheme allegedly devised by the defendant contradicts his claim that he had no notice or idea that his actions were prohibited. *See* Government's Response to Defendant's Memorandum Brief at 7. The government also contends that other courts have already found the law in question to be constitutional. *See, e.g., California Bankers Association v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *United States v. Dichne,* 612 F.2d 632 (2d Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980); *United States v. Fitzgibbon,* 576 F.2d 279 (10th Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978). In addition, courts have recognized similar offenses under Title 31 of the United States Code. *See, e.g., United States v. Tobon-Builes,* 706 F.2d 1092 (11th Cir.1983); *United States v. Dickinson,* 706 F.2d 88 (2d Cir. 1983); *United States v. Kattan-Kassin,* 696 F.2d 893 (11th Cir.1983); *United States v. Dichne,* 612 F.2d 632 (2d Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980); *United States v. Thompson,* 603 F.2d 1200 (5th Cir.1979); *United States v. Beusch,* 596 F.2d 871 (9th Cir.1979); *United States v. Fitzgibbon,* 576

F.2d 279 (10th Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978).

Reviewing the charges in the Indictment, it appears that the defendant could not be charged with a crime under only one of the statutes cited. The charging sections depend on interlocking two or more federal laws. The cornerstone of the charges, however, is section 5313 of Title 31 of the United States Code. Under that section a financial institution must file a CTR when a person's [8] currency deposit or withdrawal exceeds $10,000 in a single day. If the CTR contains false statements or if material facts are concealed so that no CTR is filed, the person responsible can be charged with filing a false statement under 18 U.S.C. § 1001. Even though a person does not have a direct legal duty to file a CTR, he can be charged as a principal if he causes another not to carry out that duty. 18 U.S.C. § 2. Thus, if section 5313 is not applicable, the defendant cannot be charged under that section, nor under the penalty enhancement section, 31 U.S.C. § 5322, nor under 18 U.S.C. §§ 2 & 1001. Consequently, this court must first rule on the constitutionality of section 5313 in the context of this Indictment.

The defendant asked the magistrate to consider certain discovery materials in regard to his motion to dismiss the Indictment. *See* Defendant's Objection to and Appeal from Magistrate's Recommendation and Order of April 30, 1984 at 22. The allegations contained in an indictment must be taken as true. *United States v. Mann,* 517 F.2d 259, 266 (5th Cir.1975). But, in general, a court ruling on the sufficiency of an indictment is limited to considering only the face of the indictment. *Id.* at 266–67. *But see United States v. Jones,* 542 F.2d 661, 664 (6th Cir.1976) ("Rules 12(e) and (a) [of the Federal Rules of Criminal Procedure] clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the

---

**8.** A "person" is defined in 31 C.F.R. § 103.11 as:

An individual, a corporation, a partnership, a trust or estate, a joint stock company, an associ-

ation, a syndicate, a joint venture, or other unincorporated organization or group, and all entities cognizable as legal personalities.

court's findings on the motion do not invade the province of the ultimate finder of fact."). The court believes that the discovery materials in question are unnecessary to determine the questions of law at issue here.

Sections 5313 and 5322 of Title 31 of the United States Code are part of what is popularly called the Bank Secrecy Act of 1970. The constitutionality of the Act has already been challenged in one case decided by the United States Supreme Court, *California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). The appeal to the Supreme Court was filed on behalf of the California Bankers Association, the Security National Bank, the American Civil Liberties Union (ACLU) as a depositor in a bank subject to the Act and as a representative of its bank customer members, and on behalf of certain bank customers. The appeal challenged the recordkeeping requirements of Title I of the Act and the reporting requirements of Title II of the Act on three grounds: (1) that the requirements constitute an unreasonable search and seizure in violation of the Fourth Amendment; (2) that the requirements constitute a coerced creation and retention of documents in violation of the Fifth Amendment privilege against compulsory self-incrimination; and (3) that the requirements violate the First Amendment rights of free speech and free association. *Id.* at 43, 94 S.Ct. at 1508. The Court, in an opinion written by Justice Rehnquist, declined to decide whether the Association had standing to make these claims. *Id.* at 44, 94 S.Ct. at 1509. But the Court did decide that the depositor plaintiffs and the ACLU did not have standing to assert their claims because they were not ripe, that is, these parties had not yet suffered any injury. *Id.* at 69, 76, 94 S.Ct. at 1521, 1524–25. Thus, the judgment of the Court, upholding the Act against all these constitutional challenges was narrowly drawn.

At the outset the Court stated that "we think it important to note that the Act's civil and criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *Id.* at 26, 94 S.Ct. at 1500. The government's position at that time essentially mirrored this view:

> [S]ince only those who violate these regulations may incur civil or criminal penalties, it is the actual regulations issued by the Secretary of the Treasury, and not the broad authorizing language of the statute, which are to be tested against the standards of the Fourth Amendment; and that when so tested they are valid.

*Id.* at 44, 94 S.Ct. at 1509.

The District Court which heard *California Bankers* ruled that the domestic reporting requirements were "an invasion of a citizen's right of privacy as amounts to an unreasonable search within the meaning of the Fourth Amendment." *Id.* at 64, 94 S.Ct. at 1519. But the Supreme Court would not let the plaintiffs below speculate as to hypothetical injuries:

> Since, as we have observed earlier in this opinion, the statute is not self-executing, and were the Secretary to take no action whatever under his authority there would be no possibility of criminal or civil sanctions being imposed on anyone, the District Court was wrong in framing the question in this manner. The question is not what sort of reporting requirements *might* have been imposed by the Secretary under the broad authority given him in the Act, but rather what sort of reporting requirements he did *in fact* impose under that authority.

*Id.* Taking this restricted approach, the Court decided that "the Secretary's requirements for the reporting of domestic financial transactions abridge no Fourth Amendment right of the banks themselves." *Id.* at 66, 94 S.Ct. at 1520. The Fourth Amendment challenge of the depositors was not considered because "the depositor plaintiffs lack standing to challenge the domestic reporting regulations, since they do not show that their transactions are required to be reported." *Id.* at 68, 94

S.Ct. at 1521. Consequently, the majority did not rule on the issue of whether the domestic reporting requirements of the Act are constitutional in relation to depositors, so this case cannot be used as authority to say that the Act has passed constitutional muster in this respect.

Justice Powell, with whom Justice Blackman joined concurring, made an additional observation on the domestic reporting requirements:

> A significant extension of the regulations' reporting requirements, however, would pose substantial and difficult constitutional questions for me. In their full reach, the reports apparently authorized by the open-ended language of the Act touch upon intimate areas of an individual's personal affairs. Financial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy.

*Id.* at 78–79, 94 S.Ct. at 1525–26.

Justice Douglas, dissenting from the Court's opinion, was sharply critical of the Act's reporting requirements:

> We cannot avoid the question of the constitutionality of the reporting provisions of the Act and of the regulations by saying they have not yet been applied to a customer in any criminal case. Under the Act and regulations the reports go forward to the investigative or prosecuting agency on written request without notice to the customer. Delivery of the records without the requisite hearing of probable cause breaches the Fourth Amendment.

*Id.* at 90, 94 S.Ct. at 1531 (footnote omitted). In separate dissents, Justices Brennan and Marshall agreed that the reporting requirements are unconstitutional.

In the two other cases cited by the government, individuals challenged the foreign reporting provision of the Bank Secrecy Act on the ground that it violated their Fifth Amendment privilege against self-incrimination. *See United States v. Dichne,* 612 F.2d 632 (2d Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980). *See also United States v. Fitzgibbon,* 576 F.2d 279, 285 (10th Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978) ("We do not here decide constitutional questions raised because they are not properly before us."). In *Dichne* the Second Circuit affirmed the trial court's ruling that the reporting requirements did not violate the defendant's right not to incriminate himself because transporting over $5,000 out of the country is "not *per se* an illegal act" and because the law is aimed at the general public and not at a "highly selective group inherently suspect of criminal activities." *Dichne,* 612 F.2d at 638. The court relied on a lower court decision which held that because these reports were required when crossing international boundaries, they involve substantial interests of the United States government. These interests outweigh the interest of an individual in avoiding a requirement which presents only a "possibility" of self-incrimination. This decision was later reversed by the Second Circuit. *United States v. San Juan,* 405 F.Supp. 686, 694–95 (D.Vt.1975), *rev'd,* 545 F.2d 314 (2d Cir.1976).

The *Gimbel* case can be distinguished from those cited by the government in that it involves a due process challenge to the *domestic* reporting provisions of the Bank Secrecy Act. Under the standards set forth in *California Bankers,* Gimbel would have standing as a customer of a financial institution to attack the constitutionality of the Act because the Indictment alleges that some of his transactions should have been reported. *California Bankers Association,* 416 U.S. at 68, 94 S.Ct. at 1520–21.

Gimbel is challenging section 5313 on the ground that if it does cover the type of transactions made by him, it is unconstitutionally vague—it does not put him on notice that it applies to him. Although, in general, a citizen is charged with knowledge of the law, it is the defendant's position that the law and regulations do not require a lawyer to name the real parties in

interest to transactions in currency [9] made through his trust fund. There is no claim that the financial institution notified customers of a contrary interpretation. The Indictment mentions that on at least one occasion "Gimbel assisted in filling out the [CTR] report," but it does not allege that any of the financial institutions involved notified customers of the domestic reporting requirements. Indictment at Count I, ¶ 5(d).

In *California Bankers* the majority said that:

> [W]e do not address ourselves to the necessity of notice to those bank customers whose transactions must be reported. The fact that the regulations do not require the banks to notify the customer of the report violates no constitutional right of the banks, and the banks in any event are left free to adopt whatever customer notification procedures they desire.

*California Bankers Association*, 416 U.S. at 70, 94 S.Ct. at 1521–22. In *San Juan* the Second Circuit held that the government should make some effort to bring the foreign reporting requirement to the traveler's attention. *United States v. San Juan*, 545 F.2d at 319. However, more recently, the Tenth Circuit held that a bank's failure to notify a customer that a CTR will be filed does not violate the customer's expectation of privacy under the Fourth Amendment or his privilege against self-incrimination under the Fifth Amendment. *United States v. Kaatz*, 705 F.2d 1237, 1242 (10th Cir.1983).

This suggests that the government is not particularly anxious to have bank customers know that the banks are filing the CTR's, lest the customers take the obvious step and structure their transactions into amounts which are unreportable. If this structuring causes the financial institution to file an inaccurate CTR or no CTR, the person responsible can be charged with a crime under certain circumstances. *See, e.g., United States v. Tobon-Builes*, 706 F.2d 1092 (11th Cir.1983).

The Indictment does not allege that the manner in which Gimbel structured his currency transactions caused a bank not to file a CTR for his law firm's trust account. Counts II through XVI do state that: "This currency was owned by a person or persons other than STANLEY P. GIMBEL." Thus, the government is charging either that an inaccurate CTR was filed which did not name the true owner of the currency or that because the true owner or owners of the currency were not revealed, no CTR was filed on their behalf. The government derives the "requirement" that the true party in interest be identified from that portion of 31 U.S.C. § 5313 which states:

> A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.[10]

---

**9.** A "transaction in currency" is defined in 31 C.F.R. § 103.11 as:

A transaction involving the physical transfer of currency from one person to another. A transaction which is a transfer of funds by means of bank check, bank draft, wire transfer, or other written order, and which does not include the physical transfer of currency is not a transaction in currency within the meaning of this part.

**10.** Although the government states that it is not charging that Gimbel had an obligation to file a CTR himself, *see* Government's Response to Defendant's Objection and Appeal and Motion for Oral Argument at 2, the Indictment does allege that Gimbel acted as a "financial institution, a

financial agency, and an agent and bailee for other persons for whom he conducted transactions in currency." Indictment, Count 1, ¶ 1(k). Whether Gimbel actually acted in any of the forementioned capacities is a question of fact which cannot be determined here. However, the court finds that the plain meaning of the term "financial institution," as it is defined by statute and regulation, *see supra* note 6, would be strained to cover a person such as Gimbel. *But see United States v. Orozco-Prada*, 732 F.2d 1076, 1079 (2d Cir.1984) (conviction of individual termed a "financial institution" upheld without discussion). The laws and regulations dealing with domestic currency transactions do not speak of "financial agencies."

On its face, this sentence could be interpreted as requiring that the identity of the true owner of the currency be revealed. However, as *California Bankers* stated, *no* part of this statute is self-executing, so the court must examine the implementing regulations to determine whether they would require a financial institution to report the identity of the true party in interest to a currency transaction made through Gimbel's law firm trust account. The key regulation in this regard is found in 31 C.F.R. § 103.22(a) (1982), which states, in part:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

Internal Revenue Service Form 4789 is the document the financial institutions are required to file.[11] This form is reproduced here as Court Exhibit A.[12] Part I of this form asks for the identity of the individual who conducts the transaction with the financial institution. Part II calls for the identity of "the individual or organization for whom this transaction was completed." Nowhere does the form require the person conducting the transaction or the individual or organization for whom the transaction was completed to state whether this person is acting as an agent or bailee for the true owner of the currency involved. The regulations, as they are implemented by this form, do not appear to take into account the out-of-the-ordinary situation involved when the account is a lawyer's trust fund.

All jurisdictions in the United States require lawyers to maintain trust accounts. In Wisconsin such an account is mandated by Supreme Court Rule 11.05, which states, in part:

> (1) A member of the state bar shall not commingle the money or other property of a client with his or her own, and he or she shall promptly report to the client the receipt by him or her of all money and other property belonging to the client. Unless the client otherwise directs in writing, whenever an attorney collects any sum of money upon any action, claim or proceeding, either by way of settlement or after trial or hearing, he

---

11. In 1980, Form 4789 was revised by the Secretary to include the directive that: "Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction if the financial institution is aware of them." The defendant challenges this provision as an instance of unauthorized rulemaking by the Secretary in that it was not validated by regulation and was not promulgated according to the notice and comment provisions set forth in the Administrative Procedure Act, 5 U.S.C. §§ 551–559. He cites a recent unpublished opinion holding that the form used for reports of importing or exporting monetary instruments is invalid because the notice and comment procedures were not observed. *See United States v. Two Hundred Thousand Dollars ($200,000) in United States Currency*, 590 F.Supp. 866 (S.D.Fla.1984) (Order Granting Claimant Palzer's Motion to Dismiss, Without Prejudice). *See also United States v. Levy*, 533 F.2d 969, 975 (5th Cir.1976). *But see United States v. Holroyd*, 732 F.2d 1122, 1124 (2d Cir. 1984).

The enabling act, 31 U.S.C. § 5313, gives the Secretary a broad grant of authority in that:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction at the time and in the way the Secretary prescribes.

The Act allows the Secretary to decide the amount and circumstances which generate the mandatory report, so it does not appear that the Secretary has not acted outside of the scope of his delegated authority in requiring that a bank must file a CTR if it is aware that one customer made aggregate transactions totalling over $10,000 in a single day.

12. Although this form is not included on the face of the Indictment, it is referred to there throughout. *See, e.g.,* Count II at ¶ 4. Thus, the Court takes judicial notice of this form and offers it here as a court exhibit.

or she shall promptly deposit his or her client's funds in a bank, trust company, credit union or savings and loan association, authorized to do business in this state, in an account separate from his or her own account and clearly designated as "Clients' Funds Account" or "Trust Funds Account," or words of similar import. The attorney, with the written consent of the client, may deposit the client's funds in a segregated client's trust account with all interest accruing thereon to the client. Unless the client otherwise directs in writing, securities of a client in bearer form shall be kept by the attorney in a safe deposit box at a bank, trust company, credit union or savings and loan association authorized to do business in this state, which safe deposit box shall be clearly designated as "Clients' Account" or "Trust Account," or words of similar import, and be separate from the attorney's own safe deposit box.

(2) A member of the state bar shall maintain and preserve for at least 6 years complete records pertaining to client's funds or assets received by him or her which are required to be distributed or segregated by sub. (1). The records shall include his or her trust fund checkbooks and the stubs thereof, statements of the account, vouchers and canceled checks or share drafts thereon or microfilm copies thereof and his or her account books showing dates, amounts and ownership of all deposits to and withdrawals by check or share draft or otherwise from the accounts, and all of the records shall be deemed to have public aspects as related to the member's fitness to practice law. Upon request of the board of attorneys professional responsibility, or upon direction of the supreme court, the records shall be submitted to the board for its inspection, audit, use and evidence under such conditions to protect the privilege of clients as the court may provide. The records, or an audit thereof, shall be produced at any disciplinary proceeding involving the attorney wherever material. Failure to produce the records shall constitute unprofessional conduct and grounds for disciplinary action.

It is obvious that with this type of account the law firm or the lawyer is *never* the real party in interest to the transactions made. And, although section (2) of this rule requires an attorney to keep records of transactions made through a trust fund, revealing such information to a third party such as a bank might raise ethical questions related to the attorney-client privilege. *See* Wis.Stat. § 905.03 (1981–1982).

That the regulations do not appear to cover a situation where the signatory to an account is acting as the agent or bailee for another cannot be dismissed as a mere oversight on the part of the Secretary of the Treasury. By way of comparison the Court offers Exhibit B, which is Customs Form 4790. Question 27 of this "Report of International Transportation of Currency or Monetary Instruments" specifically asks the individual: "Were you acting as an agent, attorney or in capacity of anyone in this currency or monetary instrument activity?" If the answer is "yes," the individual is asked to list the name, address, and business activity, occupation or profession of the real party in interest. This form must be sworn to and signed by the individual conducting the transaction.

Under the plain meaning of the regulations implementing the Bank Secrecy Act, Gimbel and others similarly situated would not have notice that they must reveal the identities of the real parties in interest to domestic currency transactions made through their trust accounts. If the reasoning of the prosecution is followed and the enabling statute does create such an obligation, then the Act and the regulations considered together are certainly vague on that point. When a law cannot be evaluated according to its plain meaning, a court may look to legislative history for guidance. *See United States v. Anderez,* 661 F.2d 404, 406 (5th Cir.1981); *United States v. Wander,* 601 F.2d 1251, 1257 n. 3 (3d Cir.1979).

The Bank Secrecy Act of 1970 was, in part, a reaction to financial abuses such as kickbacks and bribes. The House of Representatives Report states the purpose behind the domestic reporting requirements:

> Criminals deal in money—cash or its equivalent. The deposit and withdrawal of large amounts of currency or its equivalent (monetary instruments) under unusual circumstances may betray a criminal activity. The money in many of these transactions may represent anything from the proceeds of a lottery racket to money for the bribery of public officials.

H.R.Rep. No. 91–975, 91st Cong., 2d Sess. 11 (1970), U.S.Code Cong. & Admin.News 1970, pp. 4394, 4396.

Section 5311 of Title 31 of the United States Code also declares the law's purpose:

> "It is the purpose of this subchapter (except section 5315) to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings."

The bill drafted by the House envisioned that the customer would be notified of what must be included in a report and would be obliged to sign the report:

> The bill requires that reports be filed both by the financial institution involved and by one or more of the other parties to or participants in the transaction, as the Secretary may require. The purpose of this is twofold. First, it permits the prosecution of a person who supplies false information for such a report and signs it. Secondly, it relieves the institution of any pressure the Secretary of the Treasury might otherwise be inclined to exert to require it to submit reports of this type without notifying the customer.

The latter procedure raises serious questions in respect to the fiduciary duty of financial institutions to their customers, not to mention the right of privacy or simple fairness.

H.R.Rep. No. 91–975, 91st Cong., 2d Sess., U.S.Code Cong. & Admin.News 1970, 4407 (1970).

The Senate version of the bill contemplated a similar requirement that both the financial institution and a party to the transaction would sign the report:

> It is expected that the reports required to be filed by a party to a currency transaction would be filed through the financial institution involved acting as an agent for the Secretary with respect to the collection of such reports. In most cases, a single document signed by the financial institution and the party to the transaction should suffice to satisfy both reporting requirements.

S.Rep. No. 91–1139, 91st Cong., 2d Sess. 6 (1970).

The regulations and form subsequently adopted by the Secretary demonstrate that he did not choose to implement that portion of the enabling act under which he could have required the person conducting the transaction to sign and file the report together with the financial institution. Thus, the legislative history of the Act is at odds with the actual implementation of the law. This tends to bear out the defendant's contention that the law is vague or nonexistent as applied to him.

The government urges the court to consider recent case law which has recognized crimes "similar" to the offenses in question. *See* Government's Response to Defendant's Memorandum Brief at 4. Of the seven cases cited,[13] four deal with convic-

---

**13.** The court also reviewed *United States v. Orozco-Prada,* 732 F.2d 1076 (2d Cir.1984); *United States v. Eisenstein,* 731 F.2d 1540 (11th Cir. 1984); *United States v. Sans,* 731 F.2d 1521 (11th Cir.1984); *United States v. Puerto,* 730 F.2d 627 (11th Cir.1984); *United States v. Kaatz,* 705 F.2d 1237 (10th Cir.1983); *United States v.*

*Hajecate,* 683 F.2d 894 (5th Cir.1982); *United States v. Anderez,* 661 F.2d 404 (5th Cir.1981); *United States v. Konefal,* 566 F.Supp. 698 (N.D. N.Y.1983). Although these cases deal with criminal proceedings brought under the Bank Secrecy Act, none of them precisely address the issue at hand.

tions obtained under the foreign transaction reporting provisions of the Bank Secrecy Act. While these opinions could serve to uphold the validity of part of the charging scheme in the *Gimbel* Indictment, they do not bear on the falsification and concealment charges being discussed here. *See United States v. Dickinson*, 706 F.2d 88, 91 (2d Cir.1983) (pattern of illegal activity must involve repeated violations of the Act for penalty enhancement provisions to apply); *United States v. Dichne*, 612 F.2d 632, 641 (2d Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980) (foreign reporting requirements of Act not violative of Fifth Amendment privilege against self-incrimination); *United States v. Beusch*, 596 F.2d 871, 877 (9th Cir.1979) (bank officer causing bank to fail to file foreign transaction report can be charged as principal); *United States v. Fitzgibbon*, 576 F.2d 279, 283–85 (10th Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978). (Provisions of Bank Secrecy Act do not preempt prosecution under false statements statute and are not violative of First and Fourth Amendments).

Three of the cases cited by the government do deal with the domestic currency transaction reporting requirements of the Act. However, *United States v. Kattan-Kassin*, 696 F.2d 893, 898 (11th Cir.1983) only stands for the proposition that each violation of 31 U.S.C. § 1059 can be prosecuted as a separate felony—a point not at issue here. In *United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979), the Fifth Circuit ruled that the statute and regulations of the Bank Secrecy Act were not vague as applied to the defendant, the chairman of the board of a Texas bank. *Id.* at 1203. The defendant had arranged for a $45,000 loan to a drug dealer. He structured the loan into five notes, each in the amount of $9,000.00 and each bearing a different maturity date. In the course of one day the defendant personally processed these notes at his bank to obtain cash. The bank had an obligation to file a CTR for currency transactions in excess of $10,000 and the court interpreted the word "transaction" to encompass the aggregate amount of multiple transactions made in a single day by one person. This case arose prior to the revision of Form 4789 to cover such situations.

The Eleventh Circuit in *United States v. Tobon-Builes*, 706 F.2d 1092 (11th Cir.1983) upheld the conviction of a defendant in a one-count indictment which alleged that:

Tobon concealed and caused to be concealed the existence, source, and transfer of approximately $185,200 in cash by purchasing approximately twenty-one cashier's checks in amounts less than $10,000 from eleven different financial institutions, using a variety of names, including false names, as payees and remitters for the purpose of avoiding the financial institutions' filing of Currency Transaction Reports....

*Id.* at 1094.

Tobon was convicted under the false statements statute, 18 U.S.C. § 1001, for giving false names and for concealing the fact that he was making currency transactions in excess of $10,000 at a single bank in a single day. The banks were under an obligation to file CTR's for currency transactions of over $10,000 made by one "person," and the Eleventh Circuit found that Tobon and his accomplice acted as a "person" under the "broad definition" in 31 C.F.R. § 103.11. *Id.* at 1097–98. This regulation defines "person" to include:

An individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, and all entities cognizable as legal personalities.

The court, on its own initiative, included the terms "principal/agent" within this definition of "person." *Id.* at 1098. *But see United States v. Higgins*, 511 F.Supp. 453, 455 (W.D.Ky.1981) (broad expansion of statute should not be imposed by judicial decision). These terms do not appear in 31

C.F.R. § 103.11. Because Tobon and his accomplice were considered as a unit fitting the definition of "person," the court did not have to consider whether the accomplice was guilty of causing the bank to file a false statement on those occasions when she used her own name and concealed the identity of Tobon as the true owner of the currency. *Id.* at 1096. It appears that the concealment charge was primarily directed toward the concealment of the aggregate amount of the transactions through the use of fictitious names and an accomplice.

The *Tobon* court noted with approval that the *Thompson* court had "adopted a sensible, substance-over-form approach in dealing with schemes to circumvent financial institution reporting requirements." *Tobon-Builes*, 706 F.2d at 1098. This court declines to adopt such an approach in the case of the *Gimbel* Indictment. Although the government and the public have a strong interest in ensuring that not only the letter but also the spirit of a law be observed, this consideration is countered by the familiar and long-standing canon of statutory construction which requires that any ambiguity concerning the ambit of criminal statutes be resolved in favor of lenity. *See Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *United States v. Levy*, 533 F.2d 969, 973 (5th Cir.1976). *See also United States v. Yermian*, 468 U.S. 63, ——, 104 S.Ct. 2936, 2947, 82 L.Ed.2d 53 (1984) (Rehnquist J., dissenting) ("I would hold that the rule of lenity is applicable in this case and that it requires the government to prove that a defendant in a § 1001 prosecution had actual knowledge that his false statements were made in a matter within federal agency jurisdiction.").

It is reasonable to require that a question be asked before a person can be accused of answering falsely or of not answering at all. *See United States v. Irwin*, 654 F.2d 671, 678–79 (10th Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). The government cannot expect a person making a transaction at a bank to volunteer all manner of information on the chance that it may be required for some government report. This is especially true when the form for the report does not contain any space or directive for supplying such information.

The Bank Secrecy Act is an enforcement tool which is meant to be used in the investigation of other crimes. It requires financial institutions to keep records and file reports on activities which are otherwise innocent acts. Similarly, if government agents were to set up a blockade of the Florida coast to apprehend drug runners, and no law created a legal duty for ship captains to steer a course which would bring them into contact with the government agents, the government could not charge a captain with a crime because he took a route which caused his ship to avoid the blockade. Some captains, whether acting for criminal or innocent motives, would deliberately steer their ships through the holes in the blockade.

Taking the allegations in the *Gimbel* Indictment as true, which the court must, it appears that this defendant has taken notice of the "blockade," has found a "hole," and is conducting his affairs accordingly. He is not the first to find that the Bank Secrecy Act has many infirmities. The district court in *United States v. San Juan*, 405 F.Supp. 686, 694–95 (D.Vt.1975), *rev'd*, 545 F.2d 314 (2d Cir.1976) actually suggested that the defendant could have avoided the foreign reporting requirements by making several trips over the border with amounts of less than $5,000. Another commentator has pointed out that:

> [D]rug financiers can readily evade or avoid the reporting requirements of the BSA [Bank Secrecy Act]. The BSA does not cover interbank transfers within the United States and wire transfers with foreign banks; reporting requirements would disrupt the flow of the massive volume of such transactions. For domestic cash deposits, a drug dealer or courier can avoid the CTR filing requirement by making deposits in amounts less than $10,000.00 at a number of banks.

Wisotksy, Exposing the War on Cocaine: The Futility and Destructiveness of Prohibition, 1983 *Wis. L. Rev.* 1305, 1370.

If an individual used the last-mentioned ruse and made currency transactions of less than $10,000.00 at *different* banks, but these transactions totalled over $10,000.00 on a single day, it could be alleged that the individual structured his transactions for the purpose of avoiding the filing of CTRs. Yet, 31 U.S.C. § 5313 and the accompanying regulations clearly do not impose an obligation on separate financial institutions to aggregate all daily transactions. But would the substance-over-form approach adopted in *Thompson* and *Tobon* allow such a person to be convicted because he had violated the spirit of the Bank Secrecy Act?

This hypothetical scenario is directly analogous to the instant situation where a loophole exists in the regulations as to a person's legal duty to identify the real party in interest to a currency transaction when the account holder is holding funds in trust for others. Not to admit that such a loophole exists would be to invite criminal prosecution of the truly unwary.

It is not within the province of the judiciary to fill in gaps in the law. A theory of prosecution cannot do so either. The Secretary of the Treasury has it within his delegated power to revise the regulations and the form to cover the type of conduct alleged in this Indictment. For reasons of economics and customer relations the banks have resisted these regulations from the outset. *See generally* S.Rep. No. 91–1139 (1970); H.R.Rep. No. 91–975 (1970); Hearings on Foreign Bank Secrecy and Bank Records (H.R. 15073) before the House Committee on Banking and Currency, 91st Cong., 1st and 2d Sess. (1969–1970); Hearings on Foreign Bank Secrecy (S. 3678 and H.R. 15073) before the Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency, 91st Cong., 2d Sess. (1970). Consequently, far from being the broad delegation of power that some feared, this enabling act has never been fully implemented.

■ Based on the considerations discussed above, the court finds that the Secretary of the Treasury has never implemented by regulations or form that portion of the Bank Secrecy Act, 31 U.S.C. § 5313(a), under which he could have required a participant in a domestic currency transaction who is acting as the agent or bailee for another to identify the person for whom the transaction is being made if that person is someone other than the signatory to the account through which the transaction is being made. If such a requirement is intended, the statute, the regulations and the form, considered together, are vague as applied to this defendant. Because the court finds the charges under 31 U.S.C. § 5313 to be invalid, the charges brought under 31 U.S.C. § 5322 and 18 U.S.C. §§ 2 and 1001 must also fail because they depend upon the applicability of section 5313.

Accordingly, the court ORDERS that Counts I through XVI of the Indictment of Stanley P. Gimbel are DISMISSED WITHOUT PREJUDICE. In issuing this order the court makes no judgment as to the facts of any of the allegations made against this defendant. The government has alleged a pattern of conduct which, if true, suggests a calculated scheme to circumvent the law. This decision should in no way be construed as condoning such conduct. The court simply rules that as a matter of law it is invalid to charge this defendant under section 5313. It is not the province of this court to judge the wisdom of the law as it stands. *See Leathers v. United States*, 471 F.2d 856 (8th Cir.1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973) (remedy for closing tax loophole is with Congress).

IT IS FURTHER ORDERED that, in view of this order of dismissal, the evidentiary motions raised by the plaintiff and the defendant are now MOOT and are therefore DENIED.

COURT EXHIBIT A

| Form **4789** (Rev. December 1982) Department of the Treasury Internal Revenue Service | **Currency Transaction Report** File a separate report for each transaction (Complete all applicable parts—see instructions) | OMB No. 1545-0183 Expires 12-31-85 |
|---|---|---|

**Part I** Identity of individual who conducted this transaction with the financial institution

| Name (Last) | First | Middle Initial | Social Security Number |
|---|---|---|---|
| Number and Street | | | Business, occupation, or profession |
| City | State | ZIP code | Country (if not U.S.) |

Method of verifying identification:
- [ ] Driver's permit ........(State)........ ........(Number)........
- [ ] Passport ........(Country)........ ........(Number)........
- [ ] Alien ID card ........(Country)........ ........(Number)........
- [ ] Other (specify) ................................

**Part II** Individual or organization for whom this transaction was completed (Complete only if different from Part I)

| Name | Identifying number |
|---|---|
| Number and Street | Business, occupation, or profession |
| City | State | ZIP code | Country (if not U.S.) |

**Part III** Customer's account number

- [ ] Savings account ........(Number)........
- [ ] Checking account ........(Number)........
- [ ] Share account ........(Number)........
- [ ] Loan account ........(Number)........
- [ ] Safety deposit box ........(Number)........
- [ ] Other (specify) ................................

**Part IV** Description of transaction. If more space is needed, attach a separate schedule and check this box [ ]

**1.** Nature of transaction (check the applicable boxes)
- [ ] Deposit
- [ ] Withdrawal
- [ ] Check Cashed
- [ ] Check Purchased } See item 6 below
- [ ] Currency Exchange
- [ ] Mail/Night Deposit
- [ ] Other (specify)

| **2.** Total amount of currency transaction (in U.S. dollars) | **3.** Amount in denominations of $100 or higher | **4.** Date of transaction (Month, day, and year) |
|---|---|---|

**5.** If other than U.S. currency is involved, please furnish the following information:

| Currency name | Country | Total amount of each foreign currency (in U.S. dollars) |
|---|---|---|

**6.** If a check was involved in this transaction, please furnish the following information (See instructions):

| Date of check | Amount of check (in U.S. dollars) | Payee |
|---|---|---|
| Drawer of check | | Drawee bank and City |

**Part V** Financial institution reporting the financial transaction

| Name and Address | Identifying number (EIN or SSN) |
|---|---|
| | Business activity |

Sign here ▶ ................(Authorized Signature)................  ................(Title)................  ................(Date)................

Type or print name of authorized signer ▷

For Paperwork Reduction Act Notice, see the back of this page.

# General Instructions

**Paperwork Reduction Act Notice.**—The Paperwork Reduction Act of 1980 says we must tell you why we are collecting this information, how we will use it, and whether you have to give it to us.

The requested information is useful in criminal, tax, and regulatory investigations. In addition to directing the Federal Government's attention to unusual or questionable transactions, the reporting requirement discourages the use of currency in illegal transactions. Financial institutions are required to provide the information under 31 CFR 103.22, 103.25, and 103.26.

**Who Must File.**—Each financial institution must file a Form 4789 for each deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to that financial institution, which involves a transaction in currency of more than $10,000. Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them.

**Exceptions.**—Banks do not have to file Form 4789 for transactions with Federal Reserve Banks, Federal Home Loan Banks, or other domestic banks.

Banks do not have to file Form 4789 for the following transactions if the amounts involved are reasonable and customary in the course of the customer's business or activities:
(1) deposits or withdrawals of currency from an existing account by an established depositor who is a U.S. resident and who—
  (a) operates a retail business in the United States (except automobile, boat, or airplane dealerships), or
  (b) operates a sports arena, race track, amusement park, bar, restaurant, hotel, licensed check cashing service, vending machine company, or theater;
(2) deposits or withdrawals, exchanges of currency, or other payments and transfers by local, state, or Federal government agencies;
(3) withdrawals for payroll purposes from an existing account by an established depositor who is a U.S. resident and who operates a firm that regularly withdraws more than $10,000 to pay employees in currency.

Banks must keep a record of customers whose transactions are not reported because of exceptions (1) through (3) above. (See 31 CFR, section 103.22 for details about what to include in this record.)

Nonbank financial institutions do not have to report transactions with commercial banks.

**When and Where to File.**—File this form by the 15th day after the date of the transaction with the Internal Revenue Service, Ogden, UT 84201, or hand carry it to your local IRS office. Keep a copy of each Form 4789 for 5 years from the date you file it.

**Identifying Number.**—For individuals this is the social security number. For others it is the Federal employer identification number (9 digits).

**Identification Required.**—Before completing a transaction, a financial institution must verify and record (1) the name and address of the individual making the transaction and (2) the identity, account number, and taxpayer identifying number (if any) of the individual or organization for whose account the transaction is being made. Use a passport or other official document showing nationality to verify the identity of an alien or nonresident of the United States. Use a document like a driver's license, etc., normally accepted as a means of identification when cashing checks, to verify the identity of anyone else. In each case, record on this form the method of identification used.

**Penalties.**—Civil and criminal penalties (up to $500,000) are provided for failure to file a report or to supply information, and for filing a false or fraudulent report. See 31 CFR, sections 103.47 and 103.49.

# Specific Instructions

**Part I.**—
(1) In the address section, enter the permanent street address of the individual conducting the transaction. If the currency was received or shipped through the U.S. Postal Service, write in "U.S. Mail." If the currency was received in a night deposit box, write in "Night Deposit." If the currency was received or shipped through an armored car service, licensed by a state or local government, provide only the service's name and address.
(2) In the social security block, enter the social security number of the individual conducting the transaction. If the individual has no number, write "None" in this block.
(3) Check the appropriate box and enter the number of the document used to verify the identity of the individual making the transaction. When the name of an individual is not required to be given, it is not necessary to describe the method of verifying identification.

**Part II.**—
(1) For individuals, enter last name, first name, and middle initial, if any, in the name block in that order. For all others, enter the complete organization name.
(2) In the identifying number block, enter the social security number or employer identification number.

**Part III.**—
Check the appropriate box and enter the appropriate customer's account number. If there is no account relationship, check Other and write in "None."

**Part IV, line 1.**—
If the transaction being reported was the sale or purchase of foreign currency, check Other and write in "sale of foreign currency" or "purchase of foreign currency," whichever applies.

**Part IV, line 6.**—
Complete this line if a check is cashed or a bank check is purchased with currency.

**Part V.**—
Institutions may also enter in the name and address block other identifying information.

☆U.S. Government Printing Office: 1983—381-180/42

**Signature.**—This report must be signed by an authorized individual. Also type or print the name of the authorized signer.

# Definitions

**Bank.**—Each agent, agency, branch, or office in the United States of a foreign bank and each agency, branch, or office in the United States of any person doing business in one or more of the capacities listed below:
(1) a commercial bank or trust company organized under the laws of any state or of the United States;
(2) a private bank;
(3) a savings and loan association or a building and loan association organized under the laws of any state or of the United States;
(4) an insured institution as defined in section 401 of the National Housing Act;
(5) a savings bank, industrial bank, or other thrift institution;
(6) a credit union organized under the laws of any state or of the United States; and
(7) any other organization chartered under the banking laws of any state and subject to the supervision of the bank supervisory authorities of a state.

**Currency.**—The coin and currency of the United States or of any other country, which circulate in and are customarily used and accepted as money in the country in which issued. It includes United States silver certificates, United States notes, and Federal Reserve notes, but does not include bank checks or other negotiable instruments not customarily accepted as money.

**Financial Institution.**—Each agency, branch, or office in the United States of any person doing business in one or more of the capacities listed below:
(1) a bank;
(2) a broker or dealer in securities, registered or required to be registered with SEC under the Securities Exchange Act of 1934;
(3) a person who engages as a business in dealing in or exchanging currency (for example, a dealer in foreign exchange or a person engaged primarily in the cashing of checks);
(4) a person who engages as a business in issuing, selling, or redeeming traveler's checks, money orders, or similar instruments, except one who does so as a selling agent exclusively, or as an incidental part of another business;
(5) a licensed transmitter of funds, or other person engaged in the business of transmitting funds abroad for others.

**Person.**—An individual, corporation, partnership, trust or estate, joint stock company, association, syndicate, joint venture, or other unincorporated organization or group, and all entities treated as legal personalities.

**Transaction in Currency.**—A transaction involving the physical transfer of currency from one person to another. A transaction in currency does not include a transfer of funds by means of bank check, bank draft, wire transfer, or other written order that does not include the physical transfer of currency.

730

COURT EXHIBIT B

[¶ 1365]   171 6-82          [Customs Form 4790]                    3297

| Customs Use Only | DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE | This form is to be filed with the<br>United States Customs Service |
|---|---|---|
| ontrol No.<br>31 USC 1101; 31 CFR 103.23 and 103.25<br>Please Type or Print | REPORT OF INTERNATIONAL<br>TRANSPORTATION OF CURRENCY<br>OR MONETARY INSTRUMENTS | Privacy Act Notification<br>on reverse |

**PART I** - FOR INDIVIDUAL DEPARTING FROM OR ENTERING THE UNITED STATES

| 1. NAME(Last or family, first and middle) | 2. IDENTIFYING NO. (See instructions) | 3. DATE OF BIRTH (Mo./Day/U |
|---|---|---|

| 4. PERMANENT ADDRESS IN UNITED STATES OR ABROAD | 5. OF WHAT COUNTRY ARE YOU A CITIZEN/SUBJECT? |
|---|---|

| 6. ADDRESS WHILE IN THE UNITED STATES | 7. PASSPORT NO. & COUNTRY |
|---|---|

| 8. U.S. VISA DATE | 9. PLACE UNITED STATES VISA WAS ISSUED | 10. IMMIGRATION ALIEN NO. (If any) |
|---|---|---|

11. CURRENCY OR MONETARY INSTRUMENT WAS: (Complete 11A or 11B)

| A. EXPORTED | | B. IMPORTED | |
|---|---|---|---|
| Departed From: (City in U.S.) | Arrived At:(Foreign City/Country) | From: (Foreign City/Country) | At: (City in U.S.) |

**PART II** - FOR PERSON SHIPPING, MAILING OR RECEIVING CURRENCY OR MONETARY INSTRUMENTS

| 12. NAME (Last or family, first and middle) | 13. IDENTIFYING NO. (See instructions) | 14. DATE OF BIRTH (Mo./Da/Yr.) |
|---|---|---|

| 15. PERMANENT ADDRESS IN UNITED STATES OR ABROAD | 16. OF WHAT COUNTRY ARE YOU A CITIZEN/SUBJECT? |
|---|---|

| 17. ADDRESS WHILE IN THE UNITED STATES | 18. PASSPORT NO. & COUNTRY |
|---|---|

| 19. U.S. VISA DATE | 20. PLACE UNITED STATES VISA WAS ISSUED | 21. IMMIGRATION ALIEN NO. (If any) |
|---|---|---|

| 22. CURRENCY OR MONETARY INSTRUMENTS | 23. CURRENCY OR MONETARY INSTRUMENTS | NAME AND ADDRESS | 24. IF THE CURRENCY OR MONETARY INSTRUMENT WAS MAILED, SHIPPED, OR TRANSPORTED COMPLETE BLOCKS A AND B. |
|---|---|---|---|
| DATE SHIPPED | ☐ Shipped To | | A. Method of Shipment (Auto, U.S. Mail, Public Carrier, etc.) |
| DATE RECEIVED | ☐ Received From | | B. Name of Transporter/Carrier |

**PART III** - CURRENCY AND MONETARY INSTRUMENT INFORMATION (SEE INSTRUCTIONS ON REVERSE) (To be completed by everyone)

| 25. TYPE AND AMOUNT OF CURRENCY/MONETARY INSTRUMENTS | | Value in U.S. Dollars | 26. IF OTHER THAN U.S. CURRENCY IS INVOLVED, PLEASE COMPLETE BLOCKS A AND B. (SEE SPECIAL INSTRUCTIONS) |
|---|---|---|---|
| Coins ........................................ | ☐ A. ▶ | $ | |
| Currency ........................................ | ☐ B. ▶ | | A. Currency Name |
| Other Instruments (Specify Type) .................. | ☐ C. ▶ | | B. Country |
| (Add lines A, B and C) .......................... | TOTAL ▶ AMOUNT | $ | |

**PART IV** - GENERAL - TO BE COMPLETED BY ALL TRAVELERS, SHIPPERS AND RECIPIENTS

27. WERE YOU ACTING AS AN AGENT, ATTORNEY OR IN CAPACITY FOR ANYONE IN THIS CURRENCY OR MONETARY INSTRUMENT ACTIVITY? (If "Yes" complete A, B and C)   ☐ Yes   ☐ No

| PERSON IN WHOSE BEHALF YOU ARE ACTING ▶ | A. Name | B. Address | C. Business activity occupation or profession |
|---|---|---|---|

Under penalties of perjury, I declare that I have examined this report, and to the best of my knowledge and belief it is true, correct and complete.

| 28. NAME AND TITLE | 29. SIGNATURE | 30. DATE |
|---|---|---|

[¶ 1365]  Customs Form 4790 (09-29-81)

## General Instructions

This report is required by Treasury Department regulations (31 Code of Federal Regulations 103).

**Who Must File.** — Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, shipped or received currency or other monetary instruments in an aggregate amount exceeding $5,000 on any one occasion from the United States to any place outside the United States, or into the United States from any place outside the United States.

**A TRANSFER OF FUNDS THROUGH NORMAL BANKING PROCEDURES WHICH DOES NOT INVOLVE THE PHYSICAL TRANSPORTATION OF CURRENCY OR MONETARY INSTRUMENTS IS NOT REQUIRED TO BE REPORTED.**

**Exceptions.** — The following persons are not required to file reports: (1) a Federal reserve bank, (2) a bank, a foreign bank, or a broker or dealer in securities in respect to currency or other monetary instruments mailed or shipped through the postal service or by common carrier, (3) a commercial bank or trust company organized under the laws of any State or of the United States with respect to overland shipments of currency or monetary instruments shipped to or received from an established customer maintaining a deposit relationship with the bank, in amounts which the bank may reasonably conclude do not exceed amounts commensurate with the customary conduct of the business, industry or profession of the customer concerned, (4) a person who is not a citizen or resident of the United States in respect to currency or other monetary instruments mailed or shipped from abroad to a bank or broker or dealer in securities through the postal service or by common carrier, (5) a common carrier of passengers in respect to currency or other monetary instruments in the possession of its passengers, (6) a common carrier of goods in respect to shipments of currency or monetary instruments not declared to be such by the shipper, (7) a travelers' check issuer or its agent in respect to the transportation of travelers' checks prior to their delivery to selling agents for eventual sale to the public, nor by (8) a person engaged as a business in the transportation of currency, monetary instruments and other commercial papers with respect to the transportation of currency or other monetary instruments overland between established offices of banks or brokers or dealers in securities and foreign persons.

**When and Where to File:**

*A. Recipients.* Each person who receives currency or other monetary instruments shall file form 4790, within 30 days after receipt, with the Customs officer in charge at any port of entry or departure or by mail with the Commissioner of Customs, Attention: Currency Transportation Reports, Washington, D.C. 20229.

*B. Shippers or Mailers.* If the currency or other monetary instrument does not accompany the person entering or departing the United States, Form 4790 may be filed by mail on or before the date of entry, departure, mailing, or shipping with the Commissioner of Customs, Attention: Currency Transportation Reports, Washington, D.C. 20229.

*C. Travelers.* Travelers carrying currency or other monetary instruments with them shall file form 4790 at the time of entry into the United States or the time of departure from the United States with the Customs officer in charge at any Customs port of entry or departure.

An additional report of a particular transportation, mailing, or shipping of currency or other monetary instruments, is not required if a complete and truthful report has already been filed. However, no person otherwise required to file a report shall be excused from liability for failure to do so if, in fact, a complete and truthful report has not been filed. Forms may be obtained from any United States Customs Service office.

**PENALTIES.** — Civil and criminal penalties, including under certain circumstances a fine of not more than $500,000 and imprisonment of not more than five years, are provided for failure to file a report, supply information, and for filing a false or fraudulent report. In addition, the currency or monetary instrument may be subject to seizure and forfeiture. See sections 103.47, 103.48 and 103.49 of the regulations.

## Definitions

**Bank.** — Each agent, agency, branch or office within the United States of a foreign bank and each agency, branch or office within the United States of any person doing business in one or more of the capacities listed: (1) a commercial bank or trust company organized under the laws of any state or of the United States; (2) a private bank; (3) a savings and loan association or a building and loan association organized under the laws of any state or of the United States; (4) an insured institution as defined in section 401 of the National Housing Act; (5) a savings bank, industrial bank or other thrift institution; (6) a credit union organized under the laws of any state or of the United States, and (7) any other organization chartered under the banking laws of any state and subject to the supervision of the bank supervisory authorities of a state.

**Foreign Bank.** — A bank organized under foreign law, or an agency, branch or office located outside the United States of a bank. The term does not include an agent, agency, branch or office within the United States of a bank organized under foreign law.

**Broker or Dealer in Securities.** — A broker or dealer in securities, registered or required to be registered with the Securities and Exchange Commission under the Securities Exchange Act of 1934.

**IDENTIFYING NUMBER.** — Individuals should enter their social security number, if any. However, aliens who do not have a social security number should enter passport or alien registration number. All others should enter their employer identification number.

**Investment Security.** — An instrument which: (1) is issued in bearer or registered form; (2) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; (3) is either one of a class or series or by its terms is divisible into a class or series of instruments; and (4) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

**Monetary Instruments.** — Coin or currency of the United States or of any other country, travelers' checks, money orders, investment securities in bearer form or otherwise in such form that title thereto passes upon delivery, and negotiable instruments (except warehouse receipts or bills of lading) in bearer form or other in such form that title thereto passes upon delivery. The term includes bank checks, travelers' checks and money orders which are signed but on which the name of the payee has been omitted, but does not include bank checks, travelers' checks or money orders made payable to the order of a named person which have not been endorsed or which bear restrictive endorsements.

**Person.** — An individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, and all entities cognizable as legal personalities.

## Special Instructions

You should complete each line which applies to you. **Part II.** — Line 22, Enter the exact date you shipped or received currency or the monetary instrument(s). Line 23, Check the applicable box and give the complete name and address of the shipper or recipient. **Part III.** — Line 26, If currency or monetary instruments of more than one country is involved, attach a schedule showing each kind, country, and amount.

### PRIVACY ACT NOTIFICATION

Pursuant to the requirements of Public Law 93 579, (Privacy Act of 1974), notice is hereby given that the authority to collect information on Form 4790 in accordance with 5 U.S.C. 552a(e)(3) is Public Law 91-508; 31 U.S.C. 1101; 5 U.S.C. 301; Reorganization Plan No. 1 of 1950; Treasury Department No. 165, revised, as amended; 31 CFR 103.

The principal purpose for collecting the information is to assure maintenance of reports or records where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings. The information collected may be provided to those officers and employees of the Customs Service and any other constituent unit of the Treasury who have a need for the records in the performance of their duties. The records may be referred to any other department or agency of the Federal Government upon the request of the head of such department or agency.

Disclosure of this information is mandatory. Failure to provide all or any part of the requested information may subject the currency or monetary instruments to seizure and forfeiture, as well as subject the individual to civil and criminal liabilities.

Disclosure of the social security number is mandatory. The authority to collect this number is 31 CFR 103.25. The social security number will be used as a means to identify the individual who files the record.

[¶ 1365]

## APPENDIX A
## COUNT ONE

1. At all times pertinent to the Indictment herein:

a. Transactions in currency were defined as transactions involving the physical transfer of currency from one person to another, as stated in pertinent part in Title 31, Code of Federal Regulations, Section 103.11.

b. Financial institutions were required to file a report for each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which was a transaction in currency of more than $10,000.00, as stated in pertinent part in Title 31, United States Code, Section 5313 (formerly 1081) and Title 31, Code of Federal Regulations, Section 103.22(a).

c. Reports of currency transactions, as described above, were required to be filed on or before the 45th day, prior to July 1980, and on or before the 15th day, after July 1980, following the day on which the reported transaction occurred. Filing was to be made with the Internal Revenue Service on the form prescribed, that is, IRS Form 4789. The reports were required to furnish all information called for in such form, as stated in pertinent part in Title 31, Code of Federal Regulations, Section 103.-25.

d. IRS Form 4789 required, among other items, the identity of the individual who conducted the transaction with the financial institution in "Part I" and the individual or organization for whom the transaction was completed in "Part II".

e. A financial institution was required to verify and record the name and address of the individual presenting a transaction in currency, as previously described, as well as the identity of any person or entity for whose or which account such transaction was to be effected, as stated in pertinent part in Title 31, Code of Federal Regulations, Section 103.26.

f. Reports of currency transactions as previously described herein were required to be made for use in criminal, tax, and regulatory investigations and proceedings, as stated in pertinent part in Title 31, United States Code, Section 5311 (formerly 1051) and Title 31, Code of Federal Regulations, Section 103.21.

g. Transactions in currency at a financial institution in one day by or for any one person were required to be reported on IRS Form 4789 as a single transaction when they aggregated over $10,000.00, as stated in pertinent part in the instructions on said form (under "Who Must File").

h. Reports of currency transactions such as previously described herein were required to be signed by the financial institution involved, were required to identify the person on whose behalf the transaction was entered into if the party in the transaction was not acting only for himself, and were required to be made by individuals acting as an agent or bailee for another in a reportable transaction, as stated in pertinent part in Title 31, United States Code, Section 1082, as of October, 1970.

i. A person acting as an agent or bailee for another person for whom a transaction in currency of more than $10,000.00 was conducted was required to make such a report as previously described herein and identify the person for whom the transaction was made, as stated in pertinent part in Title 31, United States Code, Section 5313, as of September, 1982.

j. The First Bank-Milwaukee was a financial institution, as defined by Title 31, United States Code, Section 5312 (formerly 1052) and Title 31, Code of Federal Regulations, Section 103.11.

k. STANLEY P. GIMBEL, defendant herein, was an attorney engaged in the practice of law in the state of Wisconsin and was a person as defined by Title 31, United States Code, Section 5312 (formerly 1052) and Title 31, Code of Federal Regulations, Section 103.11. He also acted in the capacity of a financial institution, a financial agency, and an agent and bailee for other persons for whom he conducted transactions in currency, as defined in Title

31, United States Code, Section 5312 and 5313 (formerly 1052, 1081 and 1082) and Title 31, Code of Federal Regulations, Section 103.11.

l. STANLEY P. GIMBEL was a customer at First Bank-Milwaukee whose currency transactions at that bank were not exempt from being reported to the Internal Revenue Service within the meaning of Title 31, Code of Federal Regulations, Section 103.22(b).

m. STANLEY P. GIMBEL had signature authority over and used the trust account of the Gimbel, Gimbel and Reilly firm at First Bank-Milwaukee.

n. STANLEY P. GIMBEL in his practice of law represented various clients in criminal and tax matters in Wisconsin and other locations and used the aforementioned trust account to receive currency, checks and transfers from them to distribute various payments on their behalf in the form of currency, checks or transfers.

2. From on or about November, 1978, to on or about November, 1983, at Milwaukee, in the Eastern District of Wisconsin, and elsewhere,

STANLEY P. GIMBEL,

defendant herein, did knowingly, willfully and intentionally falsify, conceal and cover-up, and cause to do so, by scheme and device, material facts within the jurisdiction of an agency or department of the United States, that is, the Internal Revenue Service.

3. The purposes of said scheme and device were to engage in activity to prevent any government agency from knowing in truth and in fact:

a. That persons other than STANLEY P. GIMBEL or his law firm were involved as the real parties in interest in the currency transactions handled on their behalf by STANLEY P. GIMBEL at First Bank-Milwaukee and other financial institutions; and

b. That STANLEY P. GIMBEL was representing various persons, some of whom were involved in criminal activity, and was converting their United States or foreign currency to payments or other distributions to be distributed on their behalf by him without the direct tracing of the payments or distribution to those persons.

4. The aforementioned material facts included that STANLEY P. GIMBEL:

a. Was depositing and withdrawing currency in amounts in excess of $10,000.00 in one day into and from the Gimbel, Gimbel and Reilly law firm trust account at First Bank-Milwaukee (This currency was received from various persons, often in amounts in excess of $10,000.00 in one day); and

b. Was acting as an agent and bailee for other persons in reportable transactions in currency at First Bank-Milwaukee; and that

c. Currency transaction reports filed with the Internal Revenue Service by the First Bank-Milwaukee were caused to be filed inaccurately and improperly by STANLEY P. GIMBEL in regard to "Part II" of the report.

5. The aforementioned scheme and device of STANLEY P. GIMBEL included:

a. The use of the Gimbel, Gimbel and Reilly law firm trust account at First Bank-Milwaukee to falsify, conceal and cover-up material facts;

b. The use of wire transfers and cashier's checks into and from said account to falsify, conceal and cover-up material facts;

c. The use of multiple deposits of currency into said account such that the aggregate of the deposits exceeded $10,000.00 in one day but the transactions were conducted in such a manner as to evade, circumvent and inhibit their reporting to the Internal Revenue Service;

d. The causing of currency transaction reports (IRS Form 4789) to be filed improperly and inaccurately by financial institutions on the occasions that the institution discovered a transaction or the aggregate

of transactions exceeding $10,000.00 on one day at one institution by STANLEY P. GIMBEL. This occurred because STANLEY P. GIMBEL did not state any other person's interest in a transaction than that of himself or the Gimbel, Gimbel and Reilly law firm when he assisted in filling out the report; and

e. The counseling and giving of advice to individuals to evade the currency transaction reporting requirements by splitting up amounts of currency exceeding $10,000.00 into amounts less than $10,000.00 at a financial institution, to use false names when opening bank accounts and when endorsing checks, and to report income to the Internal Revenue Service in an amount different than actually received by those persons as an alternative to such evasion and falsity.

6. It was a further part of the scheme and device that STANLEY P. GIMBEL would and did participate on numerous occasions between 1978 and 1983 in activity involving the causing of currency transaction reports to not be filed at financial institutions, the causing of such reports to be filed improperly and inaccurately at financial institutions, the receipt and custody of currency, the deposit and withdrawal of currency, the disbursement of currency, meetings concerning currency, and the receipt and disbursement of cashier's checks. This activity was done in furtherance of the scheme and device to falsify, conceal and cover-up material facts.

In violation of Title 18, United States Code, Section 1001 and 2.

## APPENDIX B

### COUNT TWO

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about April 22, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $17,000.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before May 7, 1982. The report was required to be filed in the aggregate amount.

4. On or about May 7, 1982, at Milwaukee, in the Eastern District of Wisconsin,

### STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $270,000.00 between April, 1982 and April, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

### COUNT THREE

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about May 17, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,-000.00, that is, the aggregate amount of $40,000.00 approximately. The transaction consisted of 5 deposits. Each deposit consisted of an amount of currency under $10,-000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before June 1, 1982. The report was required to be filed in the aggregate amount.

4. On or about June 1, 1982, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT FOUR

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about May 18, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,-000.00, that is, the aggregate amount of $16,000.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,-000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before June 2, 1982. The report was required to be filed in the aggregate amount.

4. On or about June 2, 1982, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly

1081 and 1059); Title 18, United States Code, Section 2.

## COUNT FIVE

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about June 10, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $15,000.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before June 25, 1982. The report was required to be filed in the aggregate amount.

4. On or about June 25, 1982, at Milwaukee, in the Eastern District of Wisconsin,

### STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT SIX

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about August 17, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $15,000.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before September 1, 1982. The report was required to be filed in the aggregate amount.

4. On or about September 1, 1982, at Milwaukee, in the Eastern District of Wisconsin,

### STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was commit-

ted in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT SEVEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about November 12, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $22,000.00 approximately. The transaction consisted of 3 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before November 27, 1982. The report was required to be filed in the aggregate amount.

4. On or about November 27, 1982, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT EIGHT

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about November 15, 1982, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $23,000.00 approximately. The transaction consisted of 3 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before November 30, 1982. The report was required to be filed in the aggregate amount.

4. On or about November 30, 1982, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report

(IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT NINE

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about February 22, 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $15,000.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before March 9, 1983. The report was required to be filed in the aggregate amount.

4. On or about March 9, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL, defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT TEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about March 2, 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,-000.00, that is, the aggregate amount of $21,000.00 approximately. The transaction consisted of 3 deposits. Each deposit consisted of an amount of currency under $10,-000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before March 17, 1983. The report was required to be filed in the aggregate amount.

4. On or about March 17, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT ELEVEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about March 25, 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of Canadian currency that equalled United States currency in excess of $10,000.00, that is, the aggregate amount of $10,948.00 in United States currency approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before April 9, 1983. The report was required to be filed in the aggregate amount.

4. On or about April 9, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## COUNT TWELVE

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about April 14, 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $29,500.00 approximately. The transaction consisted of 4 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before April 29, 1983. The report was required to be filed in the aggregate amount.

4. On or about April 29, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

COUNT THIRTEEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about April 15, 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $29,100.00 approximately. The transaction consisted of 4 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before April 30, 1983. The report was required to be filed in the aggregate amount.

4. On or about April 30, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

COUNT FOURTEEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about April 19, 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,-

000.00, that is, the aggregate amount of $15,000.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,-000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before May 4, 1983. The report was required to be filed in the aggregate amount.

4. On or about May 4, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

COUNT FIFTEEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about April 22 1983, a customer of the First Bank-Milwaukee, that is STANLEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that

is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,-000.00, that is, the aggregate amount of $12,140.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,-000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before May 7, 1983. The report was required to be filed in the aggregate amount.

4. On or about May 7, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

COUNT SIXTEEN

The GRAND JURY further charges:

1. Paragraph (1) inclusive of Count One of this Indictment is incorporated by reference herein as if set out in full.

2. On or about May 2, 1983, a customer of the First Bank-Milwaukee, that is STAN-

LEY P. GIMBEL, defendant herein, engaged in a transaction in currency, that is, a deposit, payment and transfer by, through and at the First Bank-Milwaukee, of United States currency in excess of $10,000.00, that is, the aggregate amount of $11,300.00 approximately. The transaction consisted of 2 deposits. Each deposit consisted of an amount of currency under $10,000.00. This currency was owned by a person or persons other than STANLEY P. GIMBEL.

3. A Currency Transaction Report (IRS Form 4789) was required to be filed with the Internal Revenue Service within 15 days from the date of the aforesaid transaction in currency in connection with it, that is, on or before May 17, 1983. The report was required to be filed in the aggregate amount.

4. On or about May 17, 1983, at Milwaukee, in the Eastern District of Wisconsin,

STANLEY P. GIMBEL,

defendant herein, did knowingly and intentionally cause the failure to file of the aforesaid Currency Transaction Report (IRS Form 4789) with the Internal Revenue Service as required by law.

5. The aforementioned failure to file was part of a pattern of illegal activity involving currency transactions exceeding $100,000.00 in any twelve month period, that is, in excess of $277,000.00 between May, 1982 and May, 1983, and was committed in furtherance of and while violating another law of the United States, that is, a violation of Title 18, United States Code, Section 1001, as more fully set forth in Count One of this Indictment.

In violation of Title 31, United States Code, Sections 5313 and 5322(b) (formerly 1081 and 1059); Title 18, United States Code, Section 2.

## ON MOTION FOR RECONSIDERATION AND CLARIFICATION

On August 23, 1984, this court dismissed, without prejudice, all sixteen counts of an indictment returned against Stanley P. Gimbel. *See* page 710–727 (Decision and Order dismissing indictment). Gimbel had been charged with multiple criminal violations of federal *banking* laws, 31 U.S.C. §§ 5313 & 5322; with causing these offenses to be committed, 18 U.S.C. § 2; and with making false statements to the government or causing them to be made, 18 U.S.C. § 1001. On September 6, 1984, the United States of America (government) filed a Motion For Reconsideration and Clarification to determine whether the court would reinstate the indictment without certain verbiage. This motion is now fully briefed and ready for decision. The facts, background and prior procedure of this case are set forth in the court's Decision and Order of August 23, 1984 and are incorporated here by reference.

## POSITIONS OF THE PARTIES

The government's view is that the indictment does not charge Gimbel with any violation that is predicated on his personal duty to file a Currency Transaction Report (CTR). The government contends that:

[T]he indictment's gist and the Government's theory is that he directly concealed and falsified facts and that he caused the concealment and falsification of facts that related to the filing of or the non-filing of CTRs. His capacities as agent and bailee are but part of the role he played in the scheme to conceal and falsify.... His role-in-chief was that of a "causer."

Government's Motion for Reconsideration and Clarification at 2. Moreover, the government asserts that Gimbel was properly charged with causing First Bank-Milwaukee to inaccurately and improperly file a CTR.

The government proposes that the court could strike paragraphs 4b and 5d, the third clause of paragraph h, and paragraphs i and k of Count I of the indictment. This would eliminate explicit reference to Gimbel's role as an agent or bailee and to

his being a financial institution. "The Government believes that the semantic changes described above will obviate the need to appeal or reindict." *Id.* at 4. If not, the government seeks clarification as to whether the court meant to find the indictment improper on any basis other than that dealing with the question of any duty imposed upon an agent or bailee.

In response, the defendant objects to the court's performing what he terms "radical surgery" upon the indictment. He points out that it is a settled rule that an indictment may not be amended except by resubmission to the grand jury, unless the matter is merely a matter of form. *See Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). The amendments or strike-outs proposed by the government are substantial in the defendant's view. He asserts that the prosecution should not be allowed to speculate as to what portions of the indictment the grand jury relied on in its determination. "To permit the amendments proposed would deprive the defendant of his constitutionally guaranteed right of the intervention of a grand jury." Response to Government's Motion for Reconsideration and Clarification at 6.

In reply, the government observes that the defendant has not responded to the merits of its motion, but instead has chosen to oppose it on technical grounds. The government answers that it is not seeking to amend the indictment, but to reinstate it in part. "The government is seeking to reinstate those parts of the indictment which it believes will still state a crime and will not be susceptible to the defects noted by the Court in its dismissal order." Government's Reply to Defendant's Response to Government's Motion for Reconsideration and Clarification at 3. The government points out that the defendant himself made a motion to strike prejudicial

surplusage earlier in these proceedings. Striking some of the verbiage would be permissible in this case, the government argues, because it would result in the indictment charging less rather than more and because it does not substitute any allegations of fact or substitute theories of prosecution. Striking these passages would require the defendant to defend on fewer grounds. "It is inconceivable how the changes sought could be prejudicial to the defendant under the standards of *United States v. Cina*, 699 F.2d 853 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), when the government is agreeing that he has not [sic] obligation to voluntarily provide a bank with client information." [1] Government's Reply at 4. The government says that it presented the grand jury with three theories and that the indictment, if reinstated as requested, would still be based upon a grand jury's finding of probable cause on two theories: falsification and concealment. *Id.* "The grand jury was presented with allegations and facts on every section sought to be reinstated." *Id.*

Under *Cina* an amendment or a variance will be allowed to stand if it does not change an "essential" or "material" element of the charge so as to cause prejudice to the defendant. In *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935), the Supreme Court explained that "material" or "substantial" variances are those which trammel the defendant's rightful expectations (1) that he be "definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense." Modifications which work to change the basic theory of the offense or alter the crime charged are considered to be amendments. *See Cina*, 699 F.2d at 858.

---

1. The government notes, however, that it is not conceding that Gimbel "is not liable for falsifi-

cation of information or the concealment of *his*

## DECISION [2]

In dismissing the indictment in the *Gimbel* case, the court held that the acts alleged in the indictment failed to charge an offense under the applicable law:

> [T]he secretary of the Treasury has never implemented by regulations or form that portion of the Bank Secrecy Act, 31 U.S.C. § 5313(a), under which he could have required a participant in a domestic currency transaction who is acting as the agent or bailee for another to identify the person for whom the transaction is being made if that person is someone other than the signatory to the account through which the transaction is being made. If such a requirement is intended, the statute, the regulations and the form, considered together, are vague as applied to this defendant. Because the court finds the charges under 31 U.S.C. § 5322 and 18 U.S.C. §§ 2 and 1001 must also fail because they depend upon the applicability of section 5313.

While recognizing the gravity of the charges, the court pointed out that "[a]lthough the government and the public have a strong interest in ensuring that not only the letter but also the spirit of a law be observed, this consideration is countered by the familiar and long-standing canon of statutory construction which requires that any ambiguity concerning the ambit of criminal statutes be resolved in favor of lenity." *See Rewis v. United States*, 401

U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971).

At the outset the court reiterates that it *did not* dismiss the indictment because it found section 5313 of the Currency and Foreign Transaction Reporting Act to be void for vagueness or ambiguous. To the contrary, section 5313 is quite clear. It requires a financial institution to file a CTR "under circumstances the Secretary [of the Treasury] prescribes by regulation," 31 U.S.C. § 5313(a). The Secretary has prescribed regulations defining "currency," "financial institution," a "bank," "person," and a "transaction in currency." *See* 31 C.F.R. § 103.11. The Secretary's regulations also set the minimum limit at which currency transaction must be reported at $10,000.00 for a domestic transaction. *See* 31 C.F.R. § 103.22(a). Following the enactment of this law in 1970, the Secretary has not seen fit to issue any regulation or form requiring that a person acting on behalf of another reveal the identity of the legal owner of the funds. In *California Bankers Association v. Shultz*, 416 U.S. 21, 26, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974), Justice Rehnquist, writing for the majority, said that "we think it important to note that the Act's civil and criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone."

In the charging section of the indictment, the government alleged that the "defendant herein, did knowingly, willfully and intentionally falsify, conceal and cover-up,

---

banking activity, no matter what the purpose or whose currency it involves."

**2.** In reaching its decision, the court has reviewed four recent decisions submitted by the parties: *United States v. Cook*, 745 F.2d 1311 (10th Cir.1984) (defendant gave fictitious names and social security numbers when making transactions with his own currency); *United States v. Denemark*, No. 84–185–CR–T–15 (M.D. Fla. January 18, 1985) (order denying defendant's motion to dismiss charges of concealing the aggregate daily amounts of currency transactions); *United States v. Giancola*, No. 84–71–Cr–Orl–11 (M.D.Fla. October 25, 1984) (order granting motion to dismiss portions of indictment because 31 C.F.R. § 103.22(a), does not impose a legal duty on a financial institution to

file a currency transaction report with respect to multiple transactions conducted on the same day at different financial institutions, even though the financial institutions are part of the same banking organization, where no single currency transaction or set of currency transactions on the same day at a given financial institution exceeded $10,000); *United States v. Sanchez Vazquez*, 585 F.Supp. 990 (N.D.Ga.1984) (indictment ruled sufficient to charge offenses in connection with alleged scheme to cause banks to fail to file required currency transaction reports when defendant engaged in transactions at different branches of the same bank). None of these cases directly applies to the case at hand.

and cause to do so, by scheme and device, material facts within the jurisdiction or an agency or department of the United States, that is, the Internal Revenue Service." In other words, the defendant is accused of personally falsifying, concealing and covering up material facts and also with causing others to do so. To this end Gimbel is said to have deposited and withdrawn currency in amounts in excess of $10,000.00 in one day into and out of the Gimbel, Gimbel & Reilly law firm trust account at First Bank-Milwaukee. In the course of these currency transactions he caused First Bank-Milwaukee to file CTRs inaccurately and improperly in regard to Part II of the report. The scheme and device included use of the Gimbel, Gimbel & Reilly law firm trust account; use of wire transfers and cashier's checks and use of multiple deposits of currency which totaled more than $10,-000.00 in one day; causing CTRs to be filed improperly and inaccurately; counseling others to evade CTR requirements; and counseling others to report income in amounts different from income actually received. Also, in furtherance of the scheme, Gimbel allegedly participated in activity which caused CTRs to be inaccurately filed or not to be filed at all. This activity involved the receipt and custody of currency, the deposit and withdrawal of currency, the disbursement of currency, meetings and receipt and disbursement of cashier's checks.

The remaining fifteen counts charge specific instances of the aforementioned conduct. For example, Count Two states that in a single day Gimbel engaged in a currency transaction which consisted of two deposits totaling approximately $17,000.00. The Indictment says that each deposit was under $10,000.00 and that this currency was owned by a person or persons other than Stanley P. Gimbel.

As explained above, the government is now proposing that the indictment be reinstated by striking out those portions which refer to acts done by Gimbel in the role of a bailee, agent or financial institution. The defendant has objected that this would constitute an impermissible amendment of the indictment. But the court does not find his view of the law to be valid. Under *United States v. Diaz*, 690 F.2d 1352 (11th Cir. 1982), a court may withdraw distinct portions of a charge in an indictment "if the effect is to narrow the issues a defendant is called on to meet." *Id.* at 1356. *See also United States v. Milestone*, 626 F.2d 264, 269 (3rd Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980). In *Diaz* the defendants owned and operated two plasmapheresis centers. The fifty-four count Indictment charged the Diazes with conspiracy to violate the Federal Food and Drug Act and with making false statements to the government. The government was allowed to withdraw the counts related to interstate commerce of adulterated and misbranded drugs and the counts involving false statements made on consent forms. The *Diaz* court relied on a Supreme Court decision holding that withdrawing a part of a charge from the consideration of the jury does not work an amendment of the indictment, provided nothing is thereby added to the indictment. *See Salinger v. United States*, 272 U.S. 542, 548–49, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926).

■ Similarly, in the instant case, Gimbel is charged with participating in a scheme or device whereby bank reporting laws were violated because false statements or no statements at all were submitted to the government. Under *Diaz*, the court could strike those passages proposed by the government if they are separable from the rest of the scheme and if this removal would narrow, not add to, the issues the defendant is called upon to meet.

After striking paragraphs 4b, 5d, i, k and part of h in Count I, the indictment would still charge Gimbel with causing concealment of material facts and with falsifying material facts in violation of the laws. The government argues that if this is done: "Count One is now left without the imposition of any duty upon the defendant as an agent or a bailee and is an offense concerned with both two false statements on CTRs in the traditional 1001 sense and a

*Tobon-Builes* [3] type split transactions prosecution." Government's Motion at 4.

The court, however, sees a number of problems with what would remain of the indictment. For even if all explicit references to Gimbel's participation in the alleged crimes as an agent or bailee are removed from the indictment, this would not eliminate the inference that Gimbel was acting in these roles when he engaged or caused others to engage in currency transactions through his firm's trust account. The indictment states that Gimbel was an attorney in the practice of law; that the real owners of the currency were persons being represented by Gimbel; and that he used the Gimbel, Gimbel & Reilly trust account to "launder" their currency. In representing the true owners of the currency and in using the trust account, Gimbel was acting as an attorney. An attorney is the agent of his client as a matter of law. *See Clear View Estates, Inc. v. Veitch*, 67 Wis.2d 372, 380, 227 N.W.2d 84, 88–89 (1975). The remaining portions of the indictment do not accuse Gimbel of causing a financial institution to fail to file a CTR in his own name nor in the name of the Gimbel, Gimbel & Reilly trust account. He is accused of causing a financial institution to file inaccurate CTRs or to fail to file CTRs on behalf of his "clients." On more than one occasion Gimbel is supposed to have received money from a client, then taken it to the bank (or had someone else do so) where it was deposited in his law firm's trust account. The government continues to assert that on those occasions when the bank filed a CTR regarding the deposit, Gimbel caused the bank to do so inaccurately by not naming the client as the "individual or organization for whom this transaction was completed" on Part II of Form 4789. In its prior decision the court decided that Gimbel had no obligation to volunteer this information.[4] The form asks

for the "identifying number" and for the "account number" of the individual or organization for whom the transaction is completed. This clearly shows that the information sought relates to a customer, not a stranger, to the bank. The court observed that the Secretary of the Treasury had never promulgated a regulation requiring one acting on behalf of another to name the principal or true owner of the currency, even though the Secretary could have done so under the enabling act. *See* 31 U.S.C. § 5313. Thus, any charges dealing with falsification in this regard are still fatally defective. *See Standard Oil Company of Texas v. United States*, 307 F.2d 120, 126 (5th Cir.1962) (courts "should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute"). Under the facts set forth in the indictment, Gimbel answered with technical accuracy the questions required by Form 4789 and by the regulations. Had Form 4789 contained a section identical to Part IV of Customs Form 4790 which asks: "Were you acting as an agent, attorney or in capacity for anyone in this currency or monetary instrument activity?" he could validly be charged with causing the filing of a false CTR.

The government believes that its *Tobon-Builes* theory is still viable in that the grand jury found that, on occasion, Gimbel split deposits or withdrawals totaling over $10,000.00 on the same day so that no CTR would be filed. Again, it does not appear that the indictment is concerned with whether the requisite CTRs were filed on behalf of the Gimbel, Gimbel & Reilly trust account. Form 4789 tells the financial institution that: "Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them."[5] How does the financial institution become aware of them? The form and the regulations provide no

---

3. *See United States v. Tobon-Builes*, 706 F.2d 1092 (11th Cir.1983).

4. The government says that it now agrees with this conclusion. *See* Government's Reply at 4.

5. The defendant challenges this provision as unauthorized rulemaking. *See* Decision and Order, at 722 n. 11.

clue. There is no space for the information to be noted on Form 4789. Apparently, the financial institution must compile these records by its own internal procedures.

In *United States v. Tobon-Builes*, 706 F.2d 1092 (11th Cir.1983), the court affirmed the conviction of an individual who purchased $185,200.00 worth of cashiers checks in amounts of less than $10,000.00 in the course of one day. Tobon and his accomplice went to eleven different banks. At each bank they purchased at least two checks which totaled over $10,000.00. Tobon was charged with concealing the true amount of his transactions in violation of 18 U.S.C. § 1001. The court explained that "concealment violations under § 1001 relate to the nondisclosure of statements required by statute, government regulation or form." *Id.* at 1096. The trial court found that Tobon was guilty of concealment which caused the bank not to file CTRs, even though he may have had no legal duty to disclose the aggregate amount of his transactions to the bank. The court reasoned that:

> [T]he requirement that a defendant must have a legal duty to disclose before he can be convicted of concealment under § 1001 has no application where, as here, the government charged and proved that Tobon willfully and knowingly caused financial institutions not to report currency transactions that they had a duty to report and would have reported if they had known about such transactions.

*Id.* at 1099.

Because Gimbel did not have a legal duty to reveal the true owners of the currency used in his transactions, he cannot be charged with the crime of concealment under the *Tobon-Builes* theory. Again, he is not accused of causing First Bank-Milwaukee to fail to file a CTR for the Gimbel, Gimbel & Reilly trust account. Had that bank aggregated his transactions in the course of one day, they would have filed a CTR for the trust account, not the individual clients. Tobon, on the other hand, was an individual "laundering" his own currency. Had he not used fictitious names and

merely broken up his transactions to avoid detection, he still could have been (and was) charged with concealment. In *Gimbel*, however, the defendant did not have a legal duty to name the owners of the currency, so a CTR would not have been filed on their behalf in any case. Thus, the charge of giving false information in regard to ownership of the currency is inextricably bound to the charge of concealing the amount of the transactions. If the first charge fails to state a crime, the second must too. In its prior decision this court declined to adopt the "substance over form" approach of other courts, *see, e.g., United States v. Thompson*, 603 F.2d 1200 (5th Cir.1979), with a felony violation of a reporting regulation being at issue.

■ Finally, paragraph 5(e) of Count I states that part of Gimbel's illegal scheme involved:

> The counseling and giving of advice to individuals to evade the currency transaction reporting requirements by splitting up amounts of currency exceeding $10,000.00 into amounts less than $10,-000.00 at a financial institution, to use false names when opening bank accounts and when endorsing checks, and to report income to the Internal Revenue Service in an amount different than actually received by those persons as an alternative to such evasion and falsity.

This section deals with violations which could have occurred without the intermediate use of the Gimbel, Gimbel & Reilly trust account. Under 18 U.S.C. § 2, Gimbel could be liable as a principal for any crimes committed pursuant to his counseling. However, paragraph 5(e) does not allege all the elements required under the federal party-to-a-crime statute, which provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against

the United States, is punishable as a principal.

18 U.S.C. § 2.

There is no allegation in the indictment that anyone acting on Gimbel's advice committed a crime. The commission of a substantive violation is an essential element under § 2, and the absence of this element from the indictment makes this section fatally defective. *See United States v. Hollinger,* 553 F.2d 535 (7th Cir.1977). The indictment must be specific in its charges and necessary allegations cannot be left to inference. *See* 1 C. Wright & A. Miller, *Federal Practice and Procedure: Criminal* § 125 (2d ed. 1982).

In summary, even with the deletions suggested by the government, the indictment is still insufficient to charge Gimbel with committing the offenses enumerated. The law applicable at the time Gimbel was indicted does not reach the type of conduct in which he allegedly engaged. The regulatory scheme implementing the Currency and Foreign Transactions Reporting Act is an imperfect vehicle for enforcing compliance with the purpose and spirit of that Act. The Act is supposed to enable the Internal Revenue Service to monitor the financial transactions of individual private persons, yet it places the onus of filing the reports on the financial institutions and it expects them to do so on the basis of the information from Form 4789. It appears that the government has taken note of this anomoly by enacting section 146 of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 146, 98 Stat. 685 (1984), which places the reporting burden directly on the transactor by providing that:

Any person

(1) who is engaged in a trade or business and

(2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions)

shall make the return described in subsection (b) with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe.

Had this law been in effect during the time of Gimbel's alleged scheme, the court would have no trouble finding the indictment sufficient.

Nevertheless, for the reasons discussed above, the court has reconsidered and attempted to clarify its Decision and Order of August 23, 1984, and has reached the conclusion that the indictment cannot be reinstated.

