**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**James J. BELCHER,**
**Defendant–Appellee.**

No. 89–6223.

United States Court of Appeals,
Eleventh Circuit.

April 2, 1991.

David F. Axelrod, Linda Collins–Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Robin Greene, Greene & Greene, Miami, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and HOFFMAN *, Senior District Judge.

TJOFLAT, Chief Judge:

The Bank Secrecy Act (the Act), 31 U.S.C. §§ 5313–5326 (1988), authorizes the Secretary of the Treasury to issue regulations requiring domestic financial institutions to report currency transactions in which they are engaged. Exercising this authority, the Secretary has promulgated a regulation requiring such institutions to report to the Internal Revenue Service (IRS) currency transactions involving over $10,000. 31 C.F.R. § 103.22(a) (1990). In this case, a grand jury in the Southern District of Florida indicted a lawyer for deliberately failing to identify the party for whom he made deposits to his law firm's trust account at a domestic bank. According to the grand jury's indictment, such failure caused the bank to make false statements or material omissions in its currency transaction reports (CTRs) to the IRS and rendered the lawyer criminally liable. The district court, concluding that the grand jury failed to charge a crime, dismissed the indictment, and the Government appealed.[1] We reverse.

## I.

The indictment alleges that in March 1987, Ron Caston, an undercover IRS agent, asked an attorney, James J. Belcher, the appellee, to launder some United States currency in order to conceal his ownership thereof. Belcher agreed to do this.

According to the indictment, Belcher laundered Caston's money in the following manner. First, Belcher formed two Florida corporations, Belcher Corp. One, Inc., and Belchercorp Two, Inc.; he made Caston the sole shareholder and director of these corporations. Then, on four separate occasions, Belcher deposited Caston's money into his law firm's trust account, the James J. Belcher, P.A. Trust Account, at the First Union National Bank of Florida (First Union) in Pompano Beach. After each of these deposits, Belcher drew checks on the trust account, in sums equaling the amount Caston had given him, payable to the two corporations; in turn, Caston deposited the checks in the corporations' bank accounts.

Belcher, between March and June 1987, laundered approximately $166,000 of Caston's money in the manner described above. Throughout this time, Belcher assured Caston that the IRS would not discover that Caston was the true owner of the money. If questioned by the IRS about the source of the deposited money, Belcher planned to invoke both the attorney-client privilege and his own fifth amendment privilege against self-incrimination.

The four deposits Belcher made to his firm's trust account were each in excess of $10,000. With respect to each deposit, the bank filed a CTR, as required by 31 U.S.C. § 5313(a)[2] and its implementing regulations, based on information provided by Belcher. These CTRs identified Belcher as the individual who conducted the transaction and the James J. Belcher, P.A. Trust Account as the "individual or corporation for whom th[e] transaction was completed"; at no time did Belcher reveal to the bank that he made the deposits for Caston.

The indictment alleged that Belcher deliberately failed to disclose to First Union the identity of the person for whom the deposits were made (i.e., the real party in

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Our jurisdiction to hear the Government's appeal is created by 28 U.S.C. § 1291 (1988) and 18 U.S.C. § 3731 (1988).

2. 31 U.S.C. § 5313(a) provides:

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary [of the Treasury] prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

interest) and that, as a result, the bank prepared and filed with the IRS four separate CTRs which contained material omissions or misstatements of fact. For such failures to disclose, Belcher was charged in four counts with causing a domestic financial institution to file CTRs containing material omissions or misstatements of fact, in violation of 31 U.S.C. § 5324(2) [3] and 18 U.S.C. § 2 (1988),[4] in four counts with using material omissions or misstatements to cause a domestic financial institution to file incomplete and false CTRs, in violation of 18 U.S.C. § 1001 (1988) [5] and 18 U.S.C. § 2, and in four counts for structuring currency transactions for the purpose of evading reporting requirements, in violation of 31 U.S.C. § 5324(3) (1988) [6] and 18 U.S.C. § 2. Belcher promptly moved the district court to dismiss the indictment for failure to charge a criminal offense, and the court granted the motion.[7]

■ The United States appeals, arguing that the district court erred in holding that the indictment failed to charge Belcher with a crime. It submits that banks, in filing CTRs, are required to reveal the real party in interest. The applicable regulations direct banks to provide all of the information requested by the prescribed CTR form (Form 4789); the form used for Belcher's transactions, it contends, clearly requested the identity of the real party in interest. Thus, Belcher, by concealing the identity of the owner of the funds he deposited, caused First Union to file false CTRs, exposing himself to criminal liability. According to the Government, the district court, in concluding that the CTR form did not ask for the identity of the real party in interest, erroneously relied on cases involving the version of Form 4789 that was revised in December 1982 (December 1982 Form 4789); these cases are inapposite—the form used in Belcher's transactions was the version of Form 4789 that was

---

**3.** 31 U.S.C. § 5324(2) makes it unlawful for a person, for the purpose of evading currency reporting requirements, to "cause or attempt to cause a domestic financial institution to file a [currency transaction] report ... that contains a material omission or misstatement of fact."

**4.** 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**5.** 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**6.** 31 U.S.C. § 5324(3) makes it unlawful for a person, for the purpose of evading currency reporting requirements, to "structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."

**7.** The district court assumed that Belcher had been charged with failure to file valid CTRs; it observed that while 31 U.S.C. § 5313(a) allows the Secretary of the Treasury to impose reporting requirements on bank customers, he has not done so; the Secretary has only imposed them on financial institutions. The court further noted that under the regulations, customers have no obligation "to structure their transactions so as to trigger the [financial institution's] reporting requirements."

The court made an erroneous assumption; the indictment does not charge Belcher with failing to file CTRs or with filing false CTRs; rather, it charges him, as indicated in the text *supra*, with causing a bank to file false CTRs. In their briefs, the parties have ignored the district court's reason for dismissing the indictment, and have focused on the question we address: do the several counts of the indictment—by alleging that Belcher deliberately withheld from the bank the identity of the real party in interest in his reportable transactions and thus caused the bank to file false CTRs—state offenses?

Despite the district court's failure to recognize the offenses charged in the indictment, there is no need to remand this case to the district court for reconsideration of its ruling. The district court dismissed the indictment for failure to charge a crime and that ruling is properly before this court. In determining whether any of the counts of the indictment state an offense, we are not restricted to a review of the rationale for the district court's decision.

revised in December 1985 (December 1985 Form 4789).[8]

Belcher, in response, acknowledges that the Secretary has the authority to issue regulations imposing reporting requirements. According to him, though, the regulations promulgated by the Secretary do not specifically require domestic banks or their customers to disclose the actual sources of deposited money. Thus, the Government's reliance on Form 4789 is misplaced; the CTR form cannot create requirements not outlined in the regulations themselves. In support of this position, Belcher cites precedent involving the December 1982 Form 4789; these cases, he contends, establish that the Bank Secrecy Act and its applicable regulations do not require the disclosure of the real party in interest to a reportable transaction. Finally, he contends that since a bank is not required to report the real party in interest, it cannot be criminal for a customer to structure a transaction in order to avoid revealing this party to a bank.

We agree with the Government. The regulations governing CTRs state that a financial institution must provide all of the information called for by the CTR form. The form in this case, the December 1985 Form 4789, clearly directs domestic banks to disclose the real party in interest to every reportable transaction. Thus, each count of the indictment alleges facts which, if true, would result in criminal liability for Belcher—i.e., that Belcher deliberately concealed the source of his funds and thus caused the bank to file false CTRs.

## II.

Under Federal Rule of Criminal Procedure 12(b),[9] an indictment may be dismissed only if there is an "infirmity of law in the prosecution." *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987); *see also United States v. Korn,* 557 F.2d 1089, 1090 (5th Cir.1977).[10] "On review, this court must reverse a dismissal if it concludes that the factual allegations in the indictment, when viewed in the light most favorable to the government, were sufficient to charge the offense as a matter of law." *Torkington,* 812 F.2d at 1354. Thus, accepting the allegations of the indictment as true, we must decide whether First Union was required by law to report the real party in interest to Belcher's transactions, and, if so, whether Belcher can be held criminally liable for intentionally concealing the source of his funds.

The Act, as stated above, authorizes the Secretary of the Treasury to promulgate regulations requiring domestic financial institutions to file CTRs describing their transactions. The Act, then, is not self-executing: its criminal penalties attach only after regulations have been promulgated by the Secretary; "if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 26, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974). The Secretary must establish who, in addition to domestic financial institutions, must file CTRs, which transactions must be reported, and the manner in which this reporting will take place.

██ The Act's currency reporting requirements are found in 31 U.S.C. § 5313(a).[11] The regulations implementing this section require financial institutions to file CTRs when they participate in transac-

---

**8.** Additionally, the Government argues that even if the later CTR form does not require the bank to report the real party in interest, the four counts charging Belcher with structuring transactions for the purpose of avoiding reporting requirements should not have been dismissed because such offenses do not depend on the filing of a CTR. Our disposition of this case makes it unnecessary for us to resolve this argument.

**9.** Fed.R.Crim.P. 12(b) provides, in pertinent part:
   Any defense, objection, or request which is capable of determination without the trial of

the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
   . . . .
   (2) Defenses and objections based on defects in the indictment or information. . . .

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**11.** For the text of section 5313, see *supra* note 1.

tions involving currency in excess of $10,000. 31 C.F.R. § 103.22(a). Reports are filed on Form 4789, which is prescribed by the Secretary. *Id.* § 103.27(d) (1990). The regulations specify that "all information called for in [the CTR] forms shall be furnished." *Id.* "Thus, Form 4789 rather than section 5313 imposes affirmative duties of disclosure with regard to currency transactions." *United States v. Murphy*, 809 F.2d 1427, 1430 (9th Cir.1987). The question, therefore, is whether Form 4789 required First Union to report the source of Belcher's deposits.

First Union completed and filed with the IRS the December 1985 Form 4789, relying on information provided by Belcher. Part I asks for the "[i]dentity of [the] individual who conducted this transaction with the financial institution." The instructions for Part I state that "[i]f the individual conducts the transaction for another person, be sure to complete Part II also." Part II is, for our purposes, the crucial section of Form 4789. It calls for the identity of the "[i]ndividual or organization for whom this transaction was completed." The instructions for Part II state that "[i]f the individual in Part I is conducting the transaction for himself or herself, do not complete Part II. In all other cases, ... complete Part II." The first entry in Part II on the December 1985 Form 4789 instructs individuals to indicate if they are conducting transactions involving multiple individuals or organizations and, if so, to read the pertinent instructions. The instructions specifically state that "[i]f this transaction is being conducted for more than one individual or organization, check Box 14, and complete the applicable entries on the back of the form. Do this also if the individual in Part I conducts a transaction that involves both himself or herself and another individual or organization." The remainder of Part II, and its instructions, asks for information concerning the individuals or organizations for whom the transaction was completed, including their names and social security or employer identification numbers.

The December 1985 Form 4789 makes it clear that a bank has a duty to disclose the identity of *all* individuals or organizations involved in a reportable transaction. We find no ambiguity in the language of this form. The indictment in this case charges that Belcher, for the purpose of concealing the source of his funds, intentionally failed to inform the bank of material information, causing it to file false CTRs. This conduct, if proven, would subject Belcher to criminal liability as a principal. *See, e.g., United States v. Meros*, 866 F.2d 1304, 1311 (11th Cir.1989) ("actions by a customer that cause a financial institution to abrogate its duty to file a CTR are criminal"); *United States v. Cure*, 804 F.2d 625, 628–29 (11th Cir.1986) (causing financial institution to fail to file CTR is criminal); *United States v. Tobon–Builes*, 706 F.2d 1092, 1099 (11th Cir.1983) (same). Therefore, we conclude that the district court erred in dismissing the indictment in this case.

■ Belcher relies, as did the district court, on three cases to support the conclusion that none of the counts of the indictment charge Belcher with a crime: *United States v. Bucey*, 876 F.2d 1297 (7th Cir. 1989); *United States v. Murphy*, 809 F.2d 1427 (9th Cir.1987); *United States v. Gimbel*, 632 F.Supp. 713 (E.D.Wis.1984), *rev'd on other grounds*, 830 F.2d 621 (7th Cir. 1987). He contends that these cases support the proposition that domestic banks are only required to disclose information specifically outlined in the regulations governing currency transactions. Since such regulations do not require domestic banks to report the real party in interest to reportable transactions, it is not necessary for a domestic bank to report this information. This analysis also leads Belcher to conclude that Form 4789 is irrelevant to determining the reporting requirements of domestic banks; simply put, Belcher argues that Form 4789 is not a regulation and thus does not impose any requirements on domestic banks. We disagree.

Belcher completely ignores the regulations' explicit directive that "all information called for in [the CTR] forms shall be furnished," 31 C.F.R. § 103.27(d); these forms are prescribed by the Secretary of the Treasury, *id.* Thus, Form 4789 has been incorporated into the regulations, and domestic banks must disclose the informa-

tion requested by the form to comply with the regulations. Indeed, the cases cited by Belcher to support his position begin with the premise that Form 4789 "imposes affirmative duties of disclosure with regard to currency transactions." *Murphy*, 809 F.2d at 1430; *see also Bucey*, 876 F.2d at 1307–09; *Gimbel*, 632 F.Supp. at 722.[12]

Belcher further argues that Form 4789, even if it imposes reporting requirements on banks, does not require disclosure of the information at issue here. He cites cases in which courts that analyzed Form 4789 concluded that domestic banks were not required to report the real party in interest to reportable transactions; accordingly, those courts dismissed charges that bank customers had caused domestic banks to file false or incomplete CTRs. Those cases, however, involved the December *1982* Form 4789.[13] The 1982 and 1985 CTR forms have similar headings for their different parts; for example, Part II for both forms asks for the "[i]ndividual or organization for whom this transaction was completed." But, the December 1982 Form 4789 does not direct banks, on its face or in its instructions, to report the identities of all parties involved in a transaction; instead, the 1982 form provides only enough space for the bank to report the identity of one person or organization other than the party named in Part I, and its instructions are silent as to when Part II should be completed. Because of this lack of direction, the courts in *Bucey, Murphy,* and *Gimbel* held that the 1982 form did not clearly impose a duty on financial institutions to disclose the real party in interest to reportable transactions. *See Bucey*, 876 F.2d at 1308–09; *Murphy*, 809 F.2d at 1431; *Gimbel*, 632 F.Supp. at 727.

Additionally, the general instructions for the December 1982 Form 4789 directed financial institutions to report "the identity ... of the individual or organization *for whose account* the transaction is made." (Emphasis added.) This language, according to the *Murphy* court, made it unclear whether the bank was required to report "on whose behalf" the deposit was made or "for whose bank account." Thus, that court concluded that it was unclear whether financial institutions were required to disclose the real parties in interest to reportable transactions. *Murphy*, 809 F.2d at 1431.

12. Belcher does not argue that the December 1985 Form 4789 is ineffective because it was not promulgated according to the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. § 553 (1988). Without deciding the issue, we note that such an argument would likely fail. Section 5313 contemplates that after the Secretary establishes which transactions shall be reported (determined in reference to amount) and who must report them, *all* information concerning reportable transactions, including all parties engaged in them, shall be reported in the manner prescribed by the Secretary. Form 4789, then, does not impose any duties on domestic financial institutions not mandated by statute or regulation; the form simply requests the important details of the transaction.

There is precedent holding that an amendment to Form 4789, imposing a duty upon banks to report multiple currency transactions by one individual amounting to more than $10,000 in a single day, was invalid under the Administrative Procedure Act (the APA). *See United States v. Reinis*, 794 F.2d 506, 508 (9th Cir. 1986) (citing *United States v. Richter*, 610 F.Supp. 480, 489 & n.14 (D.C.Ill.1985)). That amendment, however, made more transactions reportable, a revision for which Congress specifically required regulation; therefore, to imple-

ment that amendment, the Secretary had to comply with the notice and comment provisions of the APA. In contrast, the amendments in the present case do not affect the types of transactions that must be reported or the individuals who must file reports. The amendment at issue here merely clarifies banks' duties to disclose all information concerning reportable transactions, including all the parties involved in such transactions. Thus, the Secretary is not subject to the requirements of the APA. *See Murphy*, 809 F.2d at 1430 n.4 (rejecting claim that December 1982 Form 4789 was ineffective because it was not promulgated in accordance with APA directives).

13. The *Bucey* court did not specifically identify which version of Form 4789 was involved in that case. The transactions in *Bucey* occurred between January 6, 1986 and February 20, 1986, shortly after the effective date of the December 1985 Form 4789. There is, however, no mention, in either the district court's or court of appeals' decision, of the recent amendments to Form 4789, and the court of appeals cited, for support, cases involving the December 1982 Form 4789. Thus, we presume that the 1982 form was at issue. If *Bucey* did involve the 1985 form, we will not follow its lead in relying on cases analyzing the 1982 form.

The form in this case—the December 1985 Form 4789—does not suffer from the same lack of clarity attributed to the December 1982 Form 4789. As stated above, the 1985 form and its instructions clearly direct financial institutions to report all individuals and organizations for whom a particular reportable currency transaction was completed. The cases relied on by Belcher and the district court simply do not apply to this case; indeed, it appears that Form 4789 was specifically altered to resolve any possible ambiguity in this area.

### III.

We conclude that financial institutions have a duty, pursuant to section 5313 and its implementing regulations, to disclose the real party in interest to reportable currency transactions. The indictment in this case charges, in several counts, that Belcher intentionally concealed the source of his funds so that the bank would be unable to report the real party in interest to his transactions. If proved, this would subject Belcher to criminal liability with respect to each count of the indictment. Accordingly, we reverse the order of the district court and remand this case for further proceedings.

IT IS SO ORDERED.